FEDERAL LAND BANK OF SPOKANE ET AL., RESPONDENTS, v. ROCKY MOUNTAIN FIRE INSURANCE CO., Appellant.

(No. 6,458.)

(Submitted May 27, 1929. Decided July 6, 1929.)

[279 Pac. 239.]

*Messrs. Loud & Leavitt* and *Messrs. Cooper, Stephenson & Hoover,* for Appellant, submitted a brief; *Mr. W. B. Leavitt* argued the cause orally.

*Mr. D. R. Young,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

On December 2, 1926, a policy of insurance was issued by the Rocky Mountain Fire Insurance Company for the principal sum of $1,300 in favor of the plaintiff A. S. Smith, insuring for a period of three years from date his dwelling-house located on a farm described and certain personal property contained therein, in Fallon county, against loss or damage by fire, being so divided as to cover liability on the house to the extent of $800 and on the personal property to the amount of $500. There was added to the policy a mortgage clause whereby, in the case of damage or loss to the dwelling, the amount thereof should be paid to the plaintiff Federal Land Bank of Spokane. On February 26, 1927, the house and its contents were completely destroyed by fire. The insurance company having failed, neglected and refused to pay the loss, this action was commenced on November 2, 1927, to recover on

the contract to the full extent of liability thereunder. The company defended on the ground of misrepresentation and concealment of material facts in the application made for the policy, failure of the plaintiffs to make and present proper proofs of loss within the time required by the express terms of the contract, and the execution of a nonwaiver agreement by the insured Smith, whereby he is estopped from claiming waiver of any of the terms and conditions of the policy. Upon issue joined the cause was tried to the court without a jury on March 30, 1928. After the close of all of the evidence introduced by both parties, each was given time within which to submit briefs and proposed findings, after the submission of which the court, being of opinion that the plaintiffs were entitled to prevail, made findings of facts and conclusions of law accordingly, upon which judgment was duly entered on June 2, 1928, in favor of the plaintiffs for the face of the policy, with interest and costs, $800 of the principal amount in favor of the Federal Land Bank of Spokane and $500 in favor of A. S. Smith, from which judgment the defendant has appealed.

1. The several assignments of error made by the defendant present but three questions necessary for consideration in disposition of the appeal, the first of which involves alleged misrepresentation and the concealment of material facts in the application made for the policy. It appears that a policy of insurance covering the same property was, in the month of September, 1926, issued to the plaintiff Smith by the Royalty Exchange Fire Assurance Company, through L. W. Busch, an abstracter of titles living at Baker, local agent for the insurance organization, which policy was one month later, on October 16, 1926, canceled for the reason that that insurance company had decided to decline further farm risks. The Baker National Bank, at the city of Baker, was at the time the policy in question was issued, prior thereto had been and afterwards continued to be, the local agent of the defendant company and other fire insurance companies, including the Franklin Fire Insurance Company. Smith being desirous of keeping fire loss protection on the property, and his insurance

written through the Busch agency having been canceled, called at the Baker National Bank and there conferred with Fred Morris, assistant cashier, upon the subject. The latter testified: "I took his application for insurance; that is his [Smith's] signature; the answers to the various questions propounded in the application are in my handwriting. * * * I asked him those questions and those are the answers he gave me. I wrote them down immediately. * * * This was a stock form of an application and was used by my bank to secure an insurance policy from the company that I might submit it to, and in the event the insurance was not written by the first company, I would submit the application to another company or take a new application." In this instance the application made was addressed to the Franklin Insurance Company, represented by the bank, and Mr. Smith was so advised. Upon acceptance of the application by the Franklin Company, the bank, as its agent, wrote a policy which was afterwards canceled before delivery. Subsequently, on December 2, 1926, F. L. Carey, a special agent for the Rocky Mountain Fire Insurance Company, called at the bank for the purpose of checking up business by it handled as agent of the latter company. There he was told of this insurance business and asked if the defendant company would write the policy desired. The application made to the Franklin Insurance Company was shown to him, and concerning the transaction he testified: "We changed that [the application] so as to submit it to the Rocky Mountain. * * * It was the 2d of December when I was here and our policy was dated the 2d of December, and I changed the date from the 16th of October to the 2d of December, the day I wrote the policy; otherwise with the exception of the 'received stamp' on the bottom of it it is in the same condition now as when I received it. * * * I issued and countersigned a policy on that application. * * * The policy was left in the bank of Baker for delivery to the insured, and so far as I know it was delivered to the insured. We have received our premium." The alleged misrepresentation or concealment of material facts in the appli-

cation said to vitiate the policy consists of the following questions and replies made thereto:

"Q. Is house occupied by owner or tenant? A. Owner.

"Q. Has risk ever been declined or canceled by any other company? A. No.

"Q. What is your title? A. Deed.

"Q. Is property in litigation or dispute? A. No answer.

"Q. Is mortgage past due? A. No."

The district court concluded as a matter of law that such application comprises no part of the contract, with which we agree; however, it may be observed that the defendant company's contention is of doubtful merit under the conditions here shown to exist, had the application been made direct to the defendant company in the first instance. Upon the admitted facts it would seem needless to prolong discussion by reference to the statutes and authorities cited by counsel. In application of most fundamental principles of law to the facts, it is apparent that the application in this instance did not and could not be considered as a part of the contract. It must be manifest that an application made to one company constitutes no part of the contract with a wholly different company. We are astonished that the insurance company should attempt to escape liability upon such flimsy pretext.

2. Should the plaintiffs be denied right of recovery on the ▮▮▮▮ contract for failure to give defendant proper and timely notice of the loss and to submit proofs thereof as by the contract required?

By the terms of the policy it is provided, among other things, that: "If fire occurs insured shall give immediate notice of any loss thereby in writing to this company * * * and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured, and of all others in the property, the cash value of each item thereof, and the amount

of loss thereon, all incumbrances thereon or other insurance, whether valid or not, covering any of said property.''

It appears that a day or two after the fire Mr. Smith personally communicated the facts to the defendant company's agent, the Baker National Bank, and thereupon written notice was sent to the defendant company, not by the insured but by the bank; it being inferable, however, that it was so sent at the request of the insured. Mr. Morris, assistant cashier, testified that while he, personally, did not send the notice to the defendant company after ''I received the notice of the fire, I presume it was sent by the bank,'' such matters are handled promptly, and if it was not sent the day ''we received notice of the loss, it wouldn't be more than two days later.'' At any rate, the defendant company received notice of the fire. Having been advised of the fire, on the morning of March 10, 1927, less than two weeks after the property was destroyed, F. L. Carey, special agent of the defendant company, again visited the town of Baker, as he states, ''primarily for the purpose of investigating the reported loss.'' As to proofs of loss, Carey on this visit informed Smith that it would be necessary for him to prepare and submit a statement of the cost of replacement of all of the property destroyed. There is conflict in the evidence as to how these should be prepared, where submitted, and to whom they should be delivered; yet the fact remains that such statements were prepared and furnished to the agents of the company. As to cost of replacement of the building, the insured had an estimate made by the Midland Coal & Lumber Company, which he states he delivered to Carey in person at Baker, ''that night or the next morning.'' It was not verified. Carey denies that it was delivered to him. At any rate, it reached the company. No objection was raised as to its sufficiency. A few days later, the insured states, he prepared and delivered to the Baker National Bank an itemized list of the personal property destroyed. Morris, assistant cashier of the bank, admits its receipt, but says that it ''was mislaid in the bank and was kept for a considerable time after I received it.'' When it was received at the office of the company does not

appear; however, Morris told Young that it had not been found until after September 22, 1927, the date when formal verified proofs of loss were presented, more than six months after Carey had visited Baker in consequence of the fire.

The court found as a matter of law that the notice of loss sent to the defendant company by the Baker National Bank within three days after the fire was a sufficient notice of loss under the provisions of the policy and the laws of the state of Montana; that the proofs of loss submitted by the insured as to the cost of replacement of the building, and the itemized list of personal property with estimated value thereof, constituted sufficient proof of loss, in consequence of the defendant company having received such statement through its agents and holding them for a period of more than sixty days without advising the insured of any defects or omissions therein; thereby waiving its right to object thereto, and becoming estopped to deny the sufficiency of such proofs. Under the conditions shown, we are of the opinion that the court made proper determination.

It is by statute provided that "delay in the presentation to an insurer of notice or proof of loss is waived, if caused by any act of his, or if he omits to make objection promptly and specifically upon that ground." (Sec. 8145, Rev. Codes 1921.) While "ordinarily a local agent has no authority to receive notice of loss, and he is not bound to communicate to the insurer a notice of loss given him by insured, especially where insured does not ask him to do so, and accordingly, if he does not do so, the notice given him is not notice to insurer; however, if insured gives timely notice to a local agent of insurer, and such agent at once communicates the notice to his principal, the requirement of the policy is satisfied, especially where insured requests the agent to notify insurer; and this is true, although the agent does not inform insurer that the notice is given in behalf of insured." (26 C. J., sec. 474.) This statement is in no way conflicting with that which was made by this court in *Careve* v. *Phoenix Ins. Co.*, 67 Mont. 236, 215 Pac. 235.

"All defects in a notice of loss, or in preliminary proofs thereof, which the insured might remedy, and which the insurer omits to specify to him, without unnecessary delay, as grounds of objection, are waived." (Sec. 8144, Rev. Codes 1921.) Here the plaintiffs pleaded a waiver of proof of loss by the defendant, and we think it fully established by the proof. The rule is that where a policy requires preliminary proofs of loss, and they are presented in due time, but are defective, such defects are waived by the failure of the insurer to make objection to them within a reasonable time; more especially so where such delay operates to postpone the time of payment of the loss, or is for such a period as to render it impossible to remedy the defects within the time limit fixed by the policy. (14 R. C. L., p. 1352; 14 Cal. Jur., p. 576; *Krause* v. *Insurance Co. of North America*, 73 Mont. 169, 235 Pac. 406; *Ames* v. *Minneapolis F. & M. Ins. Co.*, 69 Mont. 177, 200 Pac. 747.)

In *Snell* v. *North British & Mercantile Ins. Co.*, 61 Mont. 547, 203 Pac. 521, it was by this court said, applicable here, that: "The great weight of authority is to the effect that, if the assured attempts to comply with the requirements of the policy as to notice and proof of loss, the receipt and retention of proof of loss by the insurer without objection constitutes a waiver of its right to object thereto as not satisfying the requirements of the policy. (26 C. J. 399, and cases cited.) While the exhibit was not sufficient to constitute proof of loss according to the requirements of the policy inasmuch as it did not set forth some of the matters required in such proof of loss, nevertheless it did constitute a complete proof of loss to the extent of showing to the defendant company what items were destroyed by the fire, and value. It was thus a proof of loss to some extent, although not complete. However, defendant company accepted and retained it without objection and made no demand for any further proof. When the insured has attempted to make proof of loss, even though such attempt may be defective or insufficient, then the burden rests upon the insurer to make objection thereto, or it must be deemed

to have waived the defect or insufficiency. It is not fair to the insured for the company to remain silent under such circumstances, allowing the insured to rest in the belief that the insurer is satisfied, and then, after the time for furnishing the proof of loss has expired, urge such defect or insufficiency to the prejudice of the insured."

3. But the defendant insists that even though under the facts it may be considered that the defendant company waived the formal notice and proofs of loss required by the policy, yet a nonwaiver agreement executed by the plaintiff Smith estops him from successfully establishing a waiver of any of the conditions of the policy by the defendant company.

At the time the defendant's special agent went to Baker to investigate the loss, he succeeded, on March 10, 1927, in obtaining Smith's signature to a nonwaiver agreement which provides in substance that any action taken by the insurance company in investigating the cause of fire or investigating and ascertaining the amount of loss and damage to the property of the party of the first part caused by fire alleged to have occurred on February 26, 1927, shall not waive or invalidate any of the conditions of the policy held by the insured, and shall not waive or invalidate any rights whatever of either of the parties. "The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of the loss or damage, without regard to the liability of the party of the second part."

Concerning this agreement Carey stated that he came to Baker the morning of March 10th to investigate the loss, and in this connection testified: "When I first came in I went down to his place and stopped there possibly five minutes; he was not there; I found him in the Baker National Bank, I think. The nonwaiver agreement was not executed at that time; it was executed the following morning. On the first occasion I saw him I presented him with the nonwaiver to provide for an investigation of the claim including the title to the premises. He signed the agreement after consulting

418

with his attorney. * * * I asked him how the fire occurred and discussed with him the ownership of the property. There was not anything said at that time in relation to the adjusting of the loss. I explained to him in relation to the adjusting of the loss; I took a blank policy out of the agent's policies and read the conditions of the policy to him. I read that part pertaining to the title and to the furnishing of proofs, and I told him as I was leaving and shortly before I left that it would be necessary for him to comply with the conditions of his policy, and also to submit an estimate for the replacement cost of the property; I wanted to have some idea of the value of the property that he was claiming loss on. His attention was called to the provisions of the policy in relation to the furnishing of proofs of loss. * * * I received about two weeks later in the mail a letter enclosing some figures on replacement cost of the building but I never saw this list pertaining to the household goods until today."

The court concluded as a matter of law "that the nonwaiver agreement executed by the parties extended only to investigation, and not to procuring from the insured of statements of damage, itemized list of property destroyed and values thereof such as were demanded from and furnished by the insured to the adjuster, Mr. Carey, and Baker National Bank, defendant's agent, on Mr. Carey's instructions."

It will be noted that the proofs of loss were submitted within the time limit prescribed in the policy, although subsequent to the date of this so-called "nonwaiver agreement," and were thereafter held by the defendant company or its agents, without objection made thereto, until long after the lapse of the limit of time prescribed for the submission of proofs in proper form. In fact, the defendant company remained silent for more than six months after the execution of the non-waiver agreement, and subsequent to the submission of proofs. It would be manifestly unfair and unjust to permit an insured to be thus lulled into a feeling of security whereby he permitted the time limit to pass, and thereupon deny him right of recovery on the ground of his failure to submit proper

proofs of loss within the period of sixty days after the loss caused by the fire. In our opinion the nonwaiver agreement in this instance has not worked any change in the final analysis respecting the rights of the insured under the circumstances. The same rule heretofore stated respecting the original contract as to waiver is proper of application. It stands to reason that if the insurer may be estopped by reason of waiver of the conditions of the original contract, so also should the rule be applied with equal force to the "nonwaiver" agreement.

For the reasons stated the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN concur.