CALDWELL, RESPONDENT, *v.* WASHINGTON FIDELITY NATIONAL INSURANCE CO., APPELLANT.

(No. 7,055.)

(Submitted May 25, 1933. Decided June 9, 1933.)

[23 Pac. (2d) 257.]

432

*Mr. John K. Claxton* and *Mr. John A. Shelton,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Mr. T. J. Davis,* for Respondent, submitted an original and a reply brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by defendant from a judgment entered upon a verdict in favor of plaintiff, after defendant's motion for a new trial was denied.

The action was brought to recover upon an accident insurance policy issued to plaintiff by the defendant company, whereby the company undertook in case of bodily injuries sustained by him during the life of the policy, effected solely through external, violent and accidental means, to pay him certain sums of money. He alleged in his complaint that on or about the fifth day of August, 1929, while the policy was in full force, he was struck by an automobile from which he suffered injuries, which he described in detail; that as a result thereof he was confined in a hospital for a period of approximately three months, and from the day of the accident to the day of filing the complaint he had been unable to work; that he had been informed by physicians and surgeons his injuries were permanent, and that he would never be able to resume his employment as a motorman or any other kind of labor. In paragraph V he alleged that he had duly performed all the conditions of the policy on his part to be performed; that on August 14, 1929, he gave to the defendant due notice and proof of the accident; that although he had demanded payment of the sum of $1,540, the full amount due him, defendant had paid him but $700, and had refused to pay the balance due; and that the defendant in writing during May, 1930, had refused to pay more.

At the commencement of the trial the court upon stipulation of counsel permitted paragraph V to be supplemented by a paragraph marked "V–A," in which, among other things, plaintiff alleged that he had done everything within his power to be done and performed under the terms of the policy, including furnishing a proof of loss, and of his accident, as required by the policy. "But that after accepting said proofs so furnished by plaintiff within the time prescribed by said policy defendant made no objection to plaintiff's proof, nor did defendant demand further proof of said loss and injury during a period of seven months after receiving said proofs of loss, and after said defendant had paid to this plaintiff the sum of $700, as heretofore set out and alleged, to-wit, double indemnity under said policy amounting to $140 for the period

from August 5, 1929, to September 5, 1929, $140 from the period from September 5, 1929, to October 5, 1929, and $70 per month for the six succeeding months thereafter, decided to refuse and in writing refused and failed and neglected to accept the proofs which had been furnished by plaintiff, in accordance with the terms of said policy  *  *  *  .'' Other allegations therein need not be set forth.

In the third affirmative defense of its answer defendant pleaded that in making the payments aggregating $700 it did so under a ''misapprehension of the facts surrounding and connected with plaintiff's alleged injury, in that plaintiff stated to the defendant that he was struck by an automobile and received his alleged injuries as a result thereof, but upon investigation defendant ascertained that plaintiff had fallen from a second-story window of his boarding-house in Walkerville, Montana, the point and place where said alleged injury occurred, while intoxicated or under the influence of intoxicating liquor, and that said injury was not received or suffered as claimed and represented by the plaintiff, and defendant did then and there discontinue said monthly payments to the plaintiff, and did then and there ask and request further and additional time in which to investigate said accident, and did then and there request of plaintiff evidence of the bodily injuries alleged to have been received by him solely through external, violent and accidental means, and that plaintiff failed and refused to furnish and supply this defendant with convincing evidence, or any evidence, substantiating and proving plaintiff's alleged claims of being struck by an automobile, and defendant is still waiting to receive such evidence and proof from said plaintiff, which plaintiff has failed or refused to furnish to it.'' This plaintiff denied.

On August 5, 1929, plaintiff was twenty-five years of age, and in good heatlh. He was then employed in the Badger mine as a motorman at a wage of $5.50 per day, and living in a room in the second story of the American House, which faces Daly Street, the principal thoroughfare of Walkerville,

a suburb of Butte. On that day plaintiff attended a picnic at Gregson Springs, returning to his room about 1 o'clock in the morning. The day had been sultry. His room had been closed all day and was very warm and disagreeable; to cool it he raised the window about a foot, as high as it would go. At this point he concluded to take a walk while waiting for the room "to be halfway decent to sleep in," as he said; so he went down the stairs to the sidewalk. He testified: "I went down an incline there, a wooden walk incline, and I was going to cross the street. When I had proceeded three or four steps from the end of the incline, suddenly something seemed to loom up, and I had a faint idea of trying to dodge it, but I saw two lights just seem to come at me so fast I couldn't, and I received a terrific blow. I imagine I was knocked to the ground, but I don't remember what happened after I received that blow. * * * The object that I saw seemed to have two dim lights as it came on me. I recognized the object that struck me as being a car; the outline seemed to be there, and the two lights."

Plaintiff was not able to produce anyone who saw the accident. Sophia Matthews then lived directly across the street from the American House. In the early morning of the day of the accident she was in bed but unable to sleep. She said: "There was quite a bit of noise, and I heard this car racing up the street, and I heard the boys hollering, and after that I heard somebody groaning. I did not go out on the street to see what had happened, because I heard so much of that noise. I thought the boys coming home from this picnic probably got too much liquor and that is the reason I did not get up. I heard the automobile go racing by my house, and heard someone yell; afterwards I heard someone groaning." She did not know plaintiff. She first learned "that someone had actually been injured about noon that day," August 5.

About 2 o'clock Gus Bolton and Mike Powers, acquaintances of plaintiff, found him lying in the street about six feet from the sidewalk. He was in a dazed condition. As he was unable to walk, Bolton and Powers carried him to his room and

placed him upon his bed. That morning, about 10 o'clock, Charles J. Borelli, general agent of the defendant company, called upon plaintiff at his room; he had sold the insurance policy to the plaintiff. Mr. Borelli saw at once that the plaintiff was badly injured and did his utmost to obtain the services of a doctor speedily, and also telephoned for an ambulance. He went to the Murray Hospital with the plaintiff in the ambulance and stayed with him until about 4 o'clock in the afternoon. After that he called upon plaintiff frequently. On August 14 Mr. Borelli furnished the blank upon which notice of the accident was given to the company and assisted plaintiff in making it out. In answer to the question, "What external and visible marks of injury were there, if any?" Mr. Borelli wrote, "Elbow, wrist, hurt hip, backbone, pelvis broken." To the question, "How did the accident occur?" the answer was, "Automobile struck me, but did not see it coming." To the question, "Who were present when the accident occurred?" the answer was, "No one known of." This notice was transmitted to the head office of the company at once, accompanied by a preliminary report dated that day and made out by Dr. James, the attending physician.

Dr. James testified that he made an examination of the plaintiff at the Murray Hospital on August 5. At that time plaintiff had general bruises all over his body, but they were more marked on the arms, face and back. The X-ray showed a fracture of the left hip joint, a fracture of the transverse process of the second and third lumbar vertebrae, and a fracture of the sacrum. The left elbow was dislocated, and the head of the radius and ulna were fractured. He also had a dislocation of the left wrist and a fracture of one of the small bones of the wrist. The patient was suffering from extreme shock. When he examined the patient there was no evidence of intoxication. (Bolton testified that when he and Powers carried plaintiff to his room: "I smelled no liquor and did not see any evidence of liquor.")

Doctors James and Kistler testified that the injuries could have been the result of plaintiff's being struck by a swiftly

moving automobile. In making a preliminary report of the accident to the company on August 14, Dr. James, in answer to the question, ''What is the precise location, nature and extent of the injury?'' wrote, ''A dislocated left rib, fracture left humerus, left wrist, pubic bone & sacrum and last lumbar vertebra.'' And in answer to the question, ''What marks or external evidences of injury were there, if any?'' he wrote, ''Face, back, legs & arms bruised & discolored.''

Supplementary reports made by the attending physicians were received by the company during the months of September, October, November and December, 1929, and during January, February, March, April, May, June and July, 1930. There was also a hospital report in September, 1929, and another in April, 1930. A supplementary report was made by the plaintiff on September 5 and another on October 8, 1929. These reports were made upon blanks furnished by the company. The company received all these reports without objection.

Plaintiff remained in the Murray Hospital for several months. On March 5, 1930, he entered St. Vincent's Hospital at Billings, Montana, to avail himself of the services of Dr. Louis W. Allard, a celebrated orthopedic surgeon. While under treatment there during May he received a letter from Borelli transmitting the company's check, in which he was advised that the company was not satisfied with the proofs submitted, and no further payments would be made until further proof was furnished by him. As soon as he was able to do so he returned to Butte and saw Mr. Borelli at his office. Borelli told him the company was not satisfied with the proofs he had offered. He told Borelli the proof seemed sufficient, ''it was a case of hit-and-run driving,'' and so far as he knew, no one had come forward to say that he had seen the accident; it was hard for him to furnish further proof. Borelli said the company did not know how he reached his room; that it would be a good idea to get an affidavit from the persons who took him there. Plaintiff then procured an affidavit of

Bolton and Powers and submitted that to Borelli. The next time he called on Borelli, plaintiff said it was time for him to send in another monthly report from his doctor, and asked for a blank. Borelli told him it would not do him any good; that the company did not intend to pay him another nickel on the policy. Afterwards B. W. Brown, manager of the Casualty Claim Department of the company, had a conference with plaintiff in Butte. According to Brown's deposition they "discussed the alleged claim presented by the plaintiff from all angles." The only result was a disagreement. Brown insisted that the company had not "been furnished with any evidence or statements that the alleged injury * * * was sustained through external, violent and accidental means by being struck by an automobile," and insisted that plaintiff "produce his witnesses." He testified that the company received the notice of the injury, two other statements or reports by plaintiff, the reports by the various physicians, and hospital reports, and told of the several payments made by the company. The reason the company discontinued payments was, he said, that in a letter sent the company in May, 1929, "it appeared that the facts and circumstances surrounding the alleged accident were different from those alleged by the plaintiff." Undoubtedly that letter was the cause of this lawsuit. It was upon the so-called information imparted therein, that the company pleaded its third affirmative defense, which it did not even attempt to prove. The author of the letter took the stand and admitted its basis was mere hearsay, gossip.

It is urged in behalf of defendant "that plaintiff wholly failed at any time before bringing suit to furnish the defendant proof of loss." The policy provides: "Written notice of injury or sickness on which claim may be based must be given to the company twenty days after the date of the accident causing such injury." "Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the company at its Home Office, Chicago, Illinois, or to any authorized agent of the company, with particulars sufficient to identify

the insured, shall be deemed to be notice to the company. * * * The company, upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made."

As has been shown, plaintiff gave defendant timely notice of ▮ the accident, stating time and place, upon a blank furnished by the company, with the assistance of the company's general agent, in which plaintiff said, "Automobile struck me, but did not see it coming." It is argued that this cannot be construed as a statement of any fact as to the manner of "occurrence of the accident." We think it was a direct statement of fact.

The giving of notice and the furnishing of proof are distinct and separate acts, and however they may be done, "whether conjunctively or separately, both are conditions precedent, which must be complied with in order to render the insurer liable, unless there is an express or implied waiver. ([4] Joyce on Insurance, sec. 3286.) * * * 'The condition can only be performed by furnishing evidence in some form of the truth of the fact stated in the notice, upon which the right of action depends. It need not be that full, clear, and explicit proof which would be required upon the trial of an issue upon the question, but it must be such reasonable evidence as the party can command at the time, to give assurance that the event has happened upon which the liability of the insurer depends. * * * The purpose of the condition is that the insurer may be able intelligently to form some estimate of his rights and liabilities before he is obliged to pay, and some proof must be exhibited.' " (*Da Rin* v. *Casualty Co. of America,* 41 Mont. 175, 108 Pac. 649, 652, 137 Am. St. Rep. 709, 27 L. R. A. (n. s.) 1164.)

Section 8143, Revised Codes 1921, declares: "When pre-
[2, 3] liminary proof of loss is required by a policy, the in-
sured is not bound to give such proof as would be necessary in
a court of justice; but it is sufficient for him to give the best
evidence which he has in his power at the time." The evident
purpose of this statute, said the court in *Da Rin* v. *Casualty
Co.*, supra, "was to dispense with the necessity of the produc-
tion, in the first instance, of formal depositions or sworn state-
ments of eye-witnesses, and declare evidence in any form suffi-
cient when it is substantial and trustworthy enough to enable
the insurer to form an intelligent estimate of his rights and
liabilities under his contract, and is the best evidence which
the insured has in his power at the time. It makes it entirely
clear that any succinct and intelligent statement, giving the
information called for by the stipulation in the policy, whether
verified or not, or whether by eye-witnesses or not, is suffi-
cient to put the insurer upon inquiry to determine whether
he is liable." (And see *Wick* v. *Western Life & Casualty Co.*,
60 Mont. 553, 199 Pac. 272.)

Plaintiff filled out, or caused to be filled out, every blank
furnished him by the company. Whether the "notice" con-
tained sufficient proof of loss we need not now inquire; it
suffices to say that the company seems to have regarded it so
until the receipt of the mischievous letter. Prior to that the
company accepted and retained the proof furnished without
objection and made no demand for any further proof. "When
the insured has attempted to make proof of loss, even though
such attempt may be defective or insufficient, then the burden
rests upon the insurer to make objection thereto, or it must
be deemed to have waived the defect or insufficiency." (*Fed-
eral Land Bank* v. *Rocky Mountain Fire Ins. Co.*, 85 Mont. 405,
279 Pac. 239, 241.)

In the meantime the company paid plaintiff in accordance
with the terms of the policy. By its acts, in the ab-
sence of a showing that it was misled by the plaintiff to its
prejudice, it must be held that the defendant waived its
right to insist upon further written proof under the terms of

the policy. That the insurer may, either voluntarily or involuntarily, waive this condition, has been settled beyond question in this state. Section 8144, Revised Codes 1921, provides: "All defects in a notice of loss, or in preliminary proofs thereof, which the insured might remedy, and which the insurer omits to specify to him, without unnecessary delay, as grounds of objection, are waived." This section is as much a part of the policy of insurance as though written therein, and is controlling wherein its provisions conflict with those contained in the policy. (*Pasherstnik* v. *Continental Ins. Co.*, 67 Mont. 19, 14 Pac. 603; *La Bonte* v. *Mutual F. & L. Ins. Co.*, 75 Mont. 1, 241 Pac. 631; *Montana Auto Finance Corp.* v. *Federal Surety Co.*, 85 Mont. 149, 278 Pac. 116.)

But it is said it is necessary to plead waiver if one seeks to rely thereon (*Snell* v. *North British & Merc. Ins. Co.*, 61 Mont. 547, 203 Pac. 521; *Krause* v. *Insurance Company of North America*, 73 Mont. 169, 235 Pac. 408), and plaintiff did not. It is true that plaintiff did not employ the word "waiver," but he pleaded the facts showing waiver. Moreover, upon the trial there was ample proof of facts, which went in without objection, to show waiver.

It is urged also by counsel for the company that plaintiff wholly failed after July 30 to furnish to the defendant a report from plaintiff's physician, as required by the policy. But plaintiff was informed by the general agent of the company, through whom a demand for further proof was made prior to July 30, that it would be useless to furnish any such report. It was not incumbent upon plaintiff to perform a useless act.

Among assignments of error are those based on instructions given to the jury, and the refusal to give instructions requested. We think the instructions presented the case to the jury fairly. Other assignments of error are specified by the company, and we have examined them all carefully; but none requires special consideration.

Counsel for the defendant place much stress upon the decision of this court in *Tuttle* v. *Pacific Mut. Life Ins. Co.*, 58 Mont. 121, 190 Pac. 993, 16 A. L. R. 601, but upon the facts it has no application to this case.

The defendant did not attempt to substantiate its allegations that plaintiff had sustained his injuries by falling from a window while he was intoxicated or under the influence of intoxicating liquor. These allegations were false and unfounded. There cannot be any reasonable doubt that the plaintiff was struck by an automobile and seriously crippled for life. The defendant did not present any defense whatever to the case made by plaintiff, except that which, upon the conditions presented, is merely technical.

The judgment is affirmed.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS, STEWART and ANDERSON concur.

Rehearing denied June 28, 1933.