838 P.2d 1353

**WESTERN AGRICULTURAL INSURANCE COMPANY, an Arizona corporation, Plaintiff–Appellant,**

v.

**INDUSTRIAL INDEMNITY INSURANCE COMPANY, a California corporation, Defendant–Appellee.**

**No. 1 CA–CV 90–568.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 25, 1992.

person knowingly escapes from *custody.*" For-    mer A.R.S. § 13–2502(A) (emphasis added).

Gallagher & Kennedy by Kevin E. O'Malley, Judith A. Morse and G. Starr Rounds, Phoenix, for plaintiff-appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Larry L. Smith and Michael R. Altaffer, Phoenix, for defendant-appellee.

## OPINION

GARBARINO, Judge.

Appellant Western Agriculture Insurance Company ("Western") sued Industrial Indemnity Insurance Company ("Industrial") seeking contribution for the payment of a fire loss to premises leased by Industrial's insured to Western's insured.

Appellant raises three issues for our consideration:

1. Does the doctrine of equitable contribution apply to the facts of this case?

2. Does the "other insurance" provision in Western's or Industrial's policy apply?

3. Does the lease between the insureds reflect an intention to share the risk of a fire loss?

The trial court granted Industrial's motion for summary judgment, ruling that Western was not entitled to contribution from Industrial. For the reasons set forth below, we affirm.

## FACTS AND PROCEDURAL HISTORY

The facts in this case are essentially undisputed. J.A. Wood–Vista, Inc. ("Wood") leased a packing shed from Tolleson Industrial Park ("Tolleson"). Wood made improvements to the shed consisting of $120,000 worth of wiring and additional office space to accommodate his use of the premises. The lease provided that Wood was to keep the packing shed in good repair. When the lease terminated, Wood was to return the "premises and facilities" to Tolleson in good condition. The lease provided that Wood would indemnify Tolleson for all claims or loss arising from any accident on the leased premises and notwithstanding any other provision therein, neither would be liable to the other for loss caused by fire. In the event of destruction of the shed or damage to such an extent as to render it unusable, the lease provided that both Wood and Tolleson would be relieved of all further obligations under the lease and the lease would be terminated.

Neither party was expressly required by the lease to obtain fire insurance on the packing shed. However, Wood obtained a

fire insurance policy covering the shed and fixtures from Western. Tolleson obtained a fire insurance policy covering the same property from Industrial. Neither insurance policy named the other insured as an additional insured or a loss payee.

On June 28, 1986, fire damaged the shed. Neither Wood nor Tolleson was at fault in causing the fire. Wood submitted a claim to Western in the sum of $159,535.46 for fire damage. Western paid $158,535.46 to Wood and Wood assigned any rights it might have against Industrial to Western. The portion of the claim relating to damage to the structure of the shed was approximately $136,000. After Industrial denied Western's request for contribution, Western filed the instant lawsuit against Industrial.

Both Western and Industrial moved for summary judgment. The trial court granted Industrial's motion and denied Western's cross motion. The trial judge stated in his minute entry that (1) Western had no right of contribution against Industrial because the two insurance policies covered different parties and different insurable interests; (2) because the policies covered separate and distinct interests, the Industrial policy did not constitute "other insurance" triggering the proration clause in either policy; and (3) Western had no claim against Tolleson or Industrial because the lease required Wood to maintain the shed in good repair and provided that the lessee would not hold the lessor liable for damage such as fire damage.

## DISCUSSION

### A. *Western's Right to Equitable Contribution*

Western first argues that because the policies issued by Western and Industrial covered the same property against the risk of fire damage, the doctrine of equitable contribution applies and Industrial should equitably share its burden of paying Wood's claim. Western concedes that Industrial's policy did not provide coverage for Wood's interest in the shed as tenant. Western argues that the interest of Industrial's insured, Tolleson, was substantially benefitted by Western's payment to Wood for the purpose of rebuilding the shed and concomitant fixtures because such property would become Tolleson's at the termination of the lease. *See Maricopa County v. Novasic,* 12 Ariz.App. 551, 473 P.2d 476 (1970) (permanent structures placed by the tenant upon the leased premises and attached to realty are deemed to be real property and belong to the lessor upon termination of the lease.)

Arizona courts have recognized that an insurer who has paid a claim may seek contribution directly from other carriers who are liable for the same loss. *St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co.,* 25 Ariz.App. 309, 543 P.2d 147 (1976). However, this court has held that a four-part test must be satisfied before one insurer may be required to contribute to another insurer's payment of a claim. Pursuant to this test, the policies must cover (1) the same parties, (2) in the same interest, (3) in the same property, and (4) against the same casualty. *Granite State Ins. Co. v. Employers Mut. Ins. Co.,* 125 Ariz. 275, 278, 609 P.2d 90, 93 (App.1980); *see also Continental Cas. Co. v. Signal Ins. Co.,* 119 Ariz. 234, 236, 580 P.2d 372, 374 (App. 1978).

In *Granite,* the court held that the four-part test was satisfied and contribution was appropriate where the two policies in question both covered the same house against losses by fire and the same party was insured under one of the policies as a named insured and under the other as a mortgagee payee. 125 Ariz. at 278, 609 P.2d at 93.

In the instant case, both the Western policy and the Industrial policy covered the packing shed and fixtures against losses by fire. Therefore, the third and fourth requirements of the test enunciated in *Granite* are satisfied. However, the policies did not cover the same parties or the same interest. Western's policy covered only Wood and Wood's leasehold interest in the shed. The Industrial policy covered only Tolleson and its interest as owner or remainderman with respect to the packing

shed. Therefore, neither the same party nor the same interest prong of the test set forth in *Granite* is satisfied. Therefore, Western is not entitled to contribution from Industrial for the claim it paid to its insured.

■ Although Western concedes that the two policies insured different parties and different interests, Western argues that courts have found a sufficient mutuality of parties and interest to warrant contribution in the lessor/lessee setting. However, the cases relied on by Western are all distinguishable from the facts in the case at bar. *See California Food Service Corp. v. Great American Ins. Co.*, 130 Cal.App.3d 892, 182 Cal.Rptr. 67 (1982). Central to the court's decision in *California Food* was its finding that both parties (and consequently their insurers) had agreed to indemnify the same party against the same loss. To the contrary, in this case, neither Tolleson nor Industrial was contractually obligated to indemnify Wood for the loss. Only Western was. Wood was not an insured or a loss payee under the Industrial policy and the lease between Wood and Tolleson specifically stated that neither the lessor nor the lessee would be liable to the other for loss or damages to the leased premises or the contents thereof from fire. The doctrine of equitable contribution is appropriate where two insurers have agreed to indemnify the same party. It would be unfair to allow the loss claimant to make an arbitrary choice as to which insurer should pay. One indemnitor should not be given an incentive to avoid paying a just claim to its insured in hopes that the co-indemnitor will pay. *California Food*, 182 Cal.Rptr. at 72–73. The present case does not involve a situation where a single indemnitee could make an arbitrary choice between two indemnitors. Because Industrial did not insure Wood and was not obligated to pay Wood anything, Western cannot argue that Industrial was given an incentive to avoid paying a just claim. *California Food* does not support application of the equitable contribution doctrine in this case.

Western also relied on *Pittsburgh Bridge & Ironworks v. Liberty Mut. Fire Ins. Co.*, 33 N.Y.2d 439, 354 N.Y.S.2d 617, 310 N.E.2d 297 (1974). Although *Pittsburgh Bridge* did hold that insurers of a lessor's and lessee's interests in leased property were obligated to cover equal shares of damage to such property, it is unclear whether the decision supports Western's claim for equitable contribution. The opinion does not discuss the provisions of the lease or whether either the lessee or lessor was required under the lease to repair the leased property or obtain insurance for such purpose. In any event, the lease between Tolleson and Wood expressly provides that neither party will be liable to the other for fire loss. It is clear that the insurance obtained by each party was solely for its own benefit and Tolleson's insurer should not be required to contribute to the claim made by Wood.

Also relied upon by Western are *Ramsdell v. Ins. Co. of N.A.*, 197 Wis. 136, 221 N.W. 654 (1928), and *Sun Ins. Office v. Varble*, 103 Ky. 758, 46 S.W. 486 (1898) (cited in 6 John A. Appleman & Jean Appleman, *Insurance Law and Practice*, § 3910, at 468 n. 30 (1972)). Because both cases can be distinguished from this case, neither supports Western's claim for equitable contribution.

Industrial's policy and Western's policy insured different parties and different interests. Neither Tolleson nor Industrial was obligated to indemnify Wood for loss caused by the fire. Rather, Western was the only party obligated pursuant to the policy it issued to Wood to indemnify Wood for the loss. Because Western merely paid to Wood what it was contractually obligated to pay under its policy, Western is not entitled to contribution from Industrial.

### B. *"Other Insurance" Provisions of the Policies*

The second argument raised by Western is that the Western and Industrial policies both assumed the existence of other insurance and provided for proration. Therefore, Industrial should be required to pay Western a pro rata share of the claim.

Western claims that the trial court misconstrued the statutorily mandated "other insurance" clause contained in Ariz.Rev.Stat. Ann. ("A.R.S.") section 20–1503. Pursuant to A.R.S. § 20–1503, every fire insurance policy issued in Arizona must conform with the provisions of the New York standard fire policy. That standard fire insurance policy provides in relevant part:

This company shall not be liable for a greater proportion of any loss than the amounts hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

In granting Industrial's motion for summary judgment, the trial court stated that the standard fire insurance policy's "whole insurance covering the property" clause was not intended to apportion loss where the policies covered distinct, separate, insurable interests in the property. The Industrial policy insured a different party and interest. It did not constitute "other insurance" with respect to the Western policy limiting Western's obligations under that policy.

Both Western and Industrial agree that Wood and Tolleson each had a separate insurable interest in the shed and that the policies each obtained covered only its own interest. Western nevertheless claims that the Industrial policy would constitute "other insurance" triggering the pro rata clause in its policy. Western argues that the statutorily mandated "other insurance" clause requires neither mutuality of parties nor of interest. It merely provides that two fire insurance policies which insure the same "property" against the same "peril" shall be prorated. Therefore, Western claims that because the Industrial policy covered the same property against the same peril, it must pay its pro rata share in accordance with its policy.

■ Western's argument fails because pro rata clauses do not give an insurer a right to contribution from other insurers. They merely limit the insurer's liability to its insured. *See, e.g., Farmers Ins. Co. v. St. Paul Fire & Marine*, 305 Or. 488, 752 P.2d 1212 (1988). In addition, the cases generally hold that a "pro rata/other insurance" provision in a policy applies only in situations where the insurance covers the same interests, and does not apply to insurance obtained upon another distinct insurable interest in the property. 16 *Couch on Insurance 2d*, Section 62:95, p. 574 (1983); *Kirkland v. Ohio Cas. Ins. Co.*, 18 Wash. App. 538, 542, 569 P.2d 1218, 1222 (1977); *National Union Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 447 F.2d 75, 77 (9th Cir.1971); *Hensley v. Farm Bureau Mut. Ins. Co. of Ark.*, 243 Ark. 408, 420 S.W.2d 76, 81 (1967).

■ The statutorily mandated "other insurance" provisions of the Western and Industrial policies have no effect here because the policies covered distinct, separate insurable interests in the packing shed. The trial court properly ruled that the other insurance clauses contained in the policies did not limit Western's liability to pay the full amount of the claim to Wood or require Industrial to pay a pro rata share of Wood's claim.

### C. *Terms of the Lease*

■ Western's final argument is that, under the terms of the lease, Tolleson assumed primary responsibility for protecting the property. Therefore, equity compels that its insurer, Industrial, contribute to the cost of the rebuilding of the packing shed. The trial court rejected this argument, stating that Wood was obligated under the lease to maintain and repair any damage to the shed and that, although Wood may have been entitled, pursuant to the lease, to simply "walk away" from the property after the fire, it was unrealistic that Wood would do so given the $120,000 investment Wood had made in the property. The trial court also noted that Wood did not choose to repair the shed out of goodwill, but rather to protect its own investment. We agree with the trial court's reasoning.

Paragraph 10 of the lease requires Wood to maintain the shed in good repair and, upon termination of the lease, to return the premises to Tolleson in good repair. Paragraphs 20 and 21 provide that Tolleson

would not be liable to Wood for damages sustained by Wood relating to the shed or any occurrence affecting the shed, that Wood would indemnify Tolleson against all claims or loss relating to the shed and that neither party would be liable to the other for loss or damages arising from fire. Therefore, Wood could have no claim against Tolleson with respect to damages from the fire. Pursuant to paragraph 24 of the lease, upon destruction of the shed or damage thereto to such an extent as to render the shed unusable, the lease would terminate and both Wood and Tolleson would be relieved of all further obligations under the lease except the obligation set forth in paragraph 10 to return the premises to the lessor in their original condition and in a state of good repair.

Under the lease, Wood had an obligation to restore the premises to their original condition and then he could have simply walked away from the lease. However, it is apparent that Wood *chose* to continue the lease and rebuild the shed and its improvements after the fire in order to protect its $120,000 investment in the shed. Wood's purpose in obtaining the Western policy was obviously to cover the costs of repair in the event it decided not to walk away but to repair and continue using the leased property.

Although Tolleson may have benefitted incidentally from Wood's decision to rebuild because Tolleson will obtain possession of the property at the termination of the lease, this is irrelevant. Although Tolleson was also benefitted by the $120,000 worth of improvements made by Wood, Wood was not entitled to contribution from Tolleson for the costs of such improvements. *See Grizzle v. Runbeck*, 74 Ariz. 92, 95, 244 P.2d 1160, 1163 (1952) (in absence of agreement to contrary, lessor has no obligation to pay lessee for improvements made to leased premises, even though the improvements are fixtures and may not be removed by lessee). In addition, Wood obviously also benefitted from its repair and continued use of the shed or else it would have terminated the lease. Wood had no right under the lease to require Tolleson to rebuild or to pay a portion of Wood's costs of rebuilding. Likewise, Wood's insurer, Western, cannot require that Tolleson's insurer, Industrial, contribute to the costs of rebuilding. Because Western received premiums to insure the risk that there would be fire damage and Wood would want to repair, it is not inequitable that Western was required to fulfill its contractual obligation to Wood.

### CONCLUSION

We affirm the trial court's grant of summary judgment in favor of Industrial and denial of Western's cross motion for summary judgment. The policy issued by Western insured a different party and a different interest than did the policy issued by Industrial. Therefore, Western is not entitled to contribution from Industrial for the claim paid to Wood. We further grant Industrial's request for reasonable attorney's fees on appeal pursuant to A.R.S. section 12–341.01 and upon Industrial's compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

McGREGOR, P.J., and LANKFORD, J., concur.