CASUALTY INDEMNITY EXCHANGE
INSURANCE COMPANY, in
Rehabilitation, Plaintiff,

v.

LIBERTY NATIONAL FIRE
INSURANCE COMPANY,
Defendant.

No. CV–94–048–BU.

United States District Court,
D. Montana,
Butte Division.

Sept. 21, 1995.

William M. O'Leary, Corette, Pohlman, Allen, Black & Carlson, Butte, MT, for plaintiff.

G. Curtis Drake, Keller, Reynolds, Drake, Johnson & Gillespie, PC, Helena, MT, for defendant.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

This action has its genesis in a controversy between two insurance companies which successively provided liability insurance coverage relative to the operation of a motel. The plaintiff, Casualty Indemnity Exchange Insurance Company ("Casualty"), instituted the action seeking contribution from the defendant, Liberty National Fire Insurance Company ("Liberty National"), with respect to Casualty's satisfaction of a claim for personal injury advanced against the owners of a motel by a guest. Liberty National moves the court, pursuant to Fed.R.Civ.P. 65, to enter summary judgment in that entity's favor upon the claims for relief advanced by Casualty.

## BACKGROUND

Casualty had issued a policy of liability insurance to the owners of the motel, Frank and Virginia Burgess. The policy issued by Casualty was in effect until 12:01 A.M. January 22, 1991. Liberty National, in turn, had issued a liability insurance policy to the Burgesses which became effective at 12:01 A.M., January 22, 1991. Both of the referenced policies were procured by FBS Insurance, a local insurance agency.

An individual identified as Kenneth E. Miller occupied a unit at the Skookum Motel located in Butte, Montana. During his period of occupancy, Miller sustained personal injuries from exposure to carbon monoxide that had emanated from the heater located in the motel unit. In that regard, the parties agree that at approximately 10:00 P.M. on the evening of January 21, 1991, Miller, having occupied the motel unit for a number of hours, became ill and sought treatment at a local hospital emergency room. After an examination, Miller returned to and spent the remainder of January 21st and the morning hours of January 22nd at the motel unit, where he was discovered unconscious on the morning of January 22nd. The Miller incident was reported by the Burgesses, on January 22, 1991, to FBS Insurance. FBS Insurance, in turn, reported the incident to Casualty, but did not similarly notify Liberty National.

Mr. Miller filed his lawsuit against the Burgesses on July 23, 1992, and effected service of a Summons and Complaint upon the Burgesses in August of 1992. It is undisputed the suit papers were forwarded to Casualty, which, in turn, referred the matter to its local attorneys to defend. It is likewise undisputed that no specific notice of the Miller action was provided to Liberty National by the Burgesses. After discovery and analysis revealed the potential monetary value of Miller's claim exceeded the limits of the Casualty policy, the limits of the policy, i.e., $300,000.00, were tendered to Miller in exchange for a release of the Burgesses from liability for Miller's injuries. After a release was executed, a check in the amount of $300,000.00 was forwarded to plaintiff's counsel on March 26, 1993. Subsequent to the foregoing transaction, Casualty was, on April 1, 1993, ordered into rehabilitation by the Commissioner of Insurance in the State of Missouri. Having been advised the check issued by Casualty to Miller's attorney had been rejected for payment, the attorneys for the Burgesses and Miller agreed to a 90-day stay of the Miller litigation.

Concerned that Casualty's rehabilitation might jeopardize the settlement and put the Burgesses' personal assets at risk, Mr. Burgess undertook to review the files he maintained in relation to the Burgesses' operation of the Skookum Motel and discovered the policy of insurance that had been issued to the Burgesses by Liberty National. On June 11, 1993, Burgess notified his attorney of the

existence of the Liberty National policy and directed the attorney to notify Liberty National. By correspondence dated June 16, 1993, the attorney notified Liberty National of the settlement negotiations that had transpired with regard to the Miller action and, in accordance with the directive of the Burgesses, demanded Liberty National to defend and indemnify the Burgesses in accordance with the terms of the Liberty National Policy.[1] The check tendered by Casualty to him in accordance with the terms of the settlement agreement having been dishonored, Miller sought relief in the court in which the action was pending requiring the Burgesses to specifically perform the terms of the settlement agreement. Ultimately, in early July, 1993, the check was honored by Casualty resulting in the termination of the Miller action against the Burgesses.

## DISCUSSION

■ Liberty National takes the position that Casualty is precluded, as a matter of law, from seeking contribution from Liberty National because Casualty failed to provide Liberty National timely notice of the Miller claim.[2] Liberty National acknowledges the doctrine of "equitable contribution" permits one insurer who has paid the entire loss to seek contribution from other insurers who are liable for the same loss, but simply argues that an insurer seeking equitable contribution from another insurer bears the burden of establishing that it provided sufficient notice to the other insurer. In retort, Casualty takes the position that notice was provided by Burgess, the insured, to Liberty National via FBS Insurance, an entity properly considered to be an agent of Liberty National. Any detriment sustained by Liberty National as a result of its agent's failure to communicate, directly to Liberty National, the notice provided by the insured, must be borne by Liberty National. In a correlative argument, Casualty takes the position that Liberty National cannot avoid its liability for equitable contribution based upon untimely notice because it has not been prejudiced by the purportedly late notice.

■ The doctrine of "equitable contribution" permits an insurer, which has paid a claim, to seek contribution directly from other insurers who are liable for the same loss. *See, Northern Ins. Co. of New York v. Allied Mutual Ins. Co.,* 955 F.2d 1353, 1360 (9th Cir.), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3033, 120 L.Ed.2d 903 (1992) (construing California law); *Western Agricultural Ins. Co. v. Industrial Indemnity Ins. Co.,* 172 Ariz. 592, 838 P.2d 1353, 1355–56 (App., Div. 1 1992); *Institute of London Underwriters v. Hartford Fire Ins. Co.,* 234 Ill.App.3d 70, 175 Ill.Dec. 297, 599 N.E.2d 1311 (Div. 5 1992). The rule, which is based upon equitable principles, is applied in those cases where an insured discharges a common obligation of another insured. *Northern Ins. Co. of New York,* 955 F.2d at 1360; *Royal Globe Ins. Co.*

---

1. The attorney for Burgess notified Miller's attorney on June 23, 1993, of the existence of the Liberty National policy as providing potential coverage for Miller's claim.

2. Liberty National also requests the court, in the event it determines coverage for the Miller claim exists under the Liberty National policy, to enter a summary ruling establishing that both the Liberty National policy and the Casualty policy are to be considered "primary"; a determination that would result in the two insurers being responsible for a pro-rata share of the damages ultimately determined to have been sustained by Miller. Liberty National, of course, relies upon the "other insurance" clause of the Liberty National policy, which Liberty National states results in both policies providing primary coverage. *See, e.g., Truck Ins. Exchange v. Transport Indemnity Co.,* 180 Mont. 419, 591 P.2d 188 (1979); *see also, Bill Atkin Volkswagen, Inc. v. McClafferty,* 213 Mont. 99, 689 P.2d 1237 (1984).

Accordingly, Liberty National implicitly concedes the coverage provided by the subject policies are, under the circumstances attendant to the Miller claim, properly considered to be concurrent. *See, Glacier General Assurance Co. v. Continental Casualty Co.,* 605 F.Supp. 126 (D.C.D.C.1985). Liberty National further concedes that if the court finds Liberty National was provided with notice sufficient to trigger its obligations under the Liberty National policy, liability resulting from the Miller claim should be distributed equally between the two insurers.

Review of the record reveals Casualty did not respond to the latter aspect of Liberty National's motion for summary judgment. Consistent with the prescription of Rule 220–1, RULES OF PROCEDURE OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA, the court deems the lack of response as an admission that, in the opinion of counsel for Casualty, the position of Liberty National upon the issue of apportionment is well taken.

v. Aetna Ins. Co., 82 Ill.App.3d 1003, 38 Ill.Dec. 449, 403 N.E.2d 680, 682 (1980). The doctrine presupposes the existence of two or more contracts of insurance which render the respective insurers "equally liable for the discharge of a common obligation." COUCH ON INSURANCE SECOND ¶ 62:151 (1983). Restated, the prerequisite to an insurer's invocation of the right to equitable contribution as against a coinsurer is that the policies insure the same risk. *See, Northern Ins. Co. of New York v. Allied Mutual Ins. Co.,* 955 F.2d at 1360; *Western Agricultural Ins. Co. v. Industrial Indemnity Ins. Co.,* 838 P.2d at 1355.

The essence of the position advocated by Liberty National is that the principle of equitable contribution has no application to the present case because coverage under the Liberty National policy was never "triggered" and, hence, Liberty National is not equally liable for the Miller claim. Coverage under the Liberty National policy was not triggered, so the argument goes, because Liberty National was not provided timely notice of the Miller claim nor tendered the defense of that claim.

■ In this diversity action, Montana law controls the substantive rights and obligations of the parties. *St. Paul Fire & Marine Ins. Co. v. Weiner,* 606 F.2d 864, 867 (9th Cir.1979). The court is unaware of, and neither party cites decisional law by the Montana Supreme Court discussing the principle of equitable contribution among insurers. The principle of equitable subrogation, however, is well established in Montana law.[3] Cognizant of the fact that the principle of equitable contribution between insurers is akin to the general principle of equitable subrogation, the court is confident the Montana Supreme Court would recognize the viability of the principle of equitable contribution as developed in other jurisdictions.

■ The issue determinative of Liberty National's motion for summary judgment is whether that entity's obligations under its insurance contract with Burgess were "triggered" with respect to the Miller claim. Of singular importance in the present case, is the issue of when, if at all, Liberty National's duty to defend its insured against the Miller claim was "triggered". Under Montana law, an insurer's duty to defend its insured arises when the insurer, through reference to pleadings, discovery, or final issues declared ready for trial, has received notice of facts representing a risk covered by the terms of the policy. *See, Lindsay Drilling & Contracting v. United States Fidelity & Guaranty Co.,* 208 Mont. 91, 676 P.2d 203, 205 (1984); *Northwestern National Cas. Co. v. Phalen,* 182 Mont. 448, 597 P.2d 720, 727 (1979); *McAlear v. St. Paul Ins. Cos.,* 493 P.2d 331, 334 (Mont.1972); *see also, Liberty Bank of Montana v. Travelers Indemnity Co.,* 870 F.2d 1504, 1506 (9th Cir.1989). This general rule contemplates the institution of an action by a claimant against the insured. *See, e.g., Fisher v. Hartford Accident & Indemnity Co.,* 329 F.2d 352, 353 (7th Cir.1964). Consequently, the rule is often restated to acknowledge that an insurer's duty to defend is ordinarily "triggered" when the insured, or someone on the insured's behalf, tenders the defense of an action potentially within the policy coverage. *See, e.g., Hartford Accident & Indemnity Co. v. Gulf Ins. Co.,* 776 F.2d 1380, 1383 (7th Cir.1985). An insurer which, without justification, refuses to defend its insured, will be estopped from denying coverage. *Id.,* at 1382; *see also, Independent Milk & Cream Co. v. Aetna Life Ins. Co.,* 68 Mont. 152, 216 P. 1109 (1923).

3. The Montana Supreme Court addressed the principle of equitable subrogation in *Skauge v. Mountain States Tel. & Tel. Co.,* 565 P.2d 628 (Mont.1977), stating as follows:

> Subrogation is a device of equity which is designed to compel the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it. (citation omitted). A property insurer who has indemnified the insured is usually subrogated to any rights the insured may have against the third party who is responsible for the loss. The theory behind this principle is that absent repayment of the insurer the insured would be unjustly enriched by virtue of recovery from both the insurer and the wrongdoer, or in the absence of such double recovery by the insured, the third party would go free despite his legal obligation in connection with the loss.

565 P.2d at 630.

Liberty National argues the first notice it received of the existence of the Miller claim came by way of a letter from Casualty's attorney to Liberty National dated June 14, 1993; a point in time when a settlement of the Miller action had already been effected between Miller and Casualty. Contrary to the suggestion of Liberty National, however, the notice provided by Burgess to FBS Insurance, constitutes notice, under Montana law, to Liberty National. *See, Federal Land Bank of Spokane v. Rocky Mountain Fire Ins. Co.*, 85 Mont. 405, 279 P. 239 (1929). *See also, Kootenai County v. Western Casualty & Surety Co.*, 113 Idaho 908, 750 P.2d 87 (1988).

Liberty National effectively concedes this point and argues that the focus of its notice argument lies in the assertion that Casualty, as a coinsurer seeking equitable contribution, had an independent duty to provide adequate notice of the Miller action to Liberty National. Liberty National's argument is misguided.

 The focus in this case is properly brought to bear upon the question of whether Liberty National was tendered the defense of the Miller action. As noted, the obligation of an insurer to provide a defense is "triggered" when the insured, or someone at the direction of the insured, tenders the defense of an action which is potentially within the policy coverage. *See, Hartford Accident & Indemnity Co. v. Gulf Ins. Co.*, 776 F.2d at 1383. The Seventh Circuit Court of Appeals in *Hartford*, acknowledging the decision whether to tender the defense of an action lies with the insured, stated as follows:

[M]ere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired. (citation omitted.) An insurance company is not required to intermeddle officiously where its services have not been requested. (citation omitted.) *Hartford Accident*, 776 F.2d at 1383.

Consequently, where the insured has failed to tender the defense of an action to its insurer, the latter is excused from its duty to perform under its policy or to contribute to a settlement procured by a coinsurer. *See, Hartford Accident*, 776 F.2d at 1383–84; *Institute of London Underwriters v. Hartford Fire Ins. Co.*, 234 Ill.App.3d 70, 175 Ill.Dec. 297, 299, 599 N.E.2d 1311, 1313 (1st Dist. 1992).[4]

Under the circumstances of this case, equity dictates that Casualty not be allowed to obtain contribution from Liberty National. First, the demand made by the Burgesses occurred after a settlement of the Miller action had effectively been negotiated by Casualty on behalf of the Burgesses. Consequently, the demand must, under the unique circumstances presented, be viewed not as a demand to defend the Miller action, but as a demand to contribute to a settlement. Had the Miller action not been settled in accordance with the terms of the settlement negotiated by Casualty on behalf of the Burgesses, it is indeed arguable that coverage under the Liberty National policy would have been "triggered" by the demand. The court, how-

---

4. There exists no decisional law from the courts of the State of Montana discussing whether under the doctrine of equitable subrogation, as the doctrine has evolved in the State of Montana, an insurer has a right to seek contribution from a coinsurer, regardless of whether or not the insured has tendered a defense to the latter carrier. This court is confident, however, that if presented with the issue, the Montana Supreme Court would recognize that an insurer is not allowed to seek equitable contribution from a coinsurer for a claim never tendered by the insured to the latter carrier. The right of an insurer to contribution from a coinsurer exists when both insurers are liable for the loss; a situation which can only arise when the obligations of both insurers under their respective policies are "triggered". Otherwise, if the doctrine of equitable contribution were applied to a coinsurer for a claim never tendered by the insured to that coinsurer, "the insurance policy becomes, in effect, a third-party beneficiary contract entered into by the insured for the direct benefit of other carriers." *Institute of London Underwriters v. Hartford Fire Ins. Co.*, 175 Ill.Dec. at 302, 599 N.E.2d at 1316. Such a rule would be "inequitable" in that it would "require an insurer to reimburse another carrier for a claim it has no obligation to pay to its insured and in circumvention of the insurer's wishes with whom it has the contract." *Id.*, at 303, 599 N.E.2d at 1317.

ever, is not called upon to address that precise issue.

 In reaching its conclusion, the court remains mindful that an insurer has an affirmative duty to inquire as to the existence of other applicable insurance in order that the insured may make an informed decision regarding the tender of the defense to multiple insurers. *See, e.g., American Star Ins. Co. v. Allstate Ins. Co.,* 12 Or.App. 553, 508 P.2d 244, 249–50 (1973). While the reason for the rule is obvious in the situation where an insurer seeks contribution from an insured, the need for the rule under the facts of the present case is equally obvious. Casualty must be charged with the duty to exercise due diligence in determining the existence of "other insurance" in order that the insured is made fully aware of all available insurance coverage and can make a deliberate and informed decision regarding the tendering of the defense to all potential insurers. Where the insurer does not satisfy this affirmative obligation, and thereby places the insured at risk, the insurer may not seek equitable contribution from a coinsurer. The rule is of particular importance in the present case, where Casualty is charged with knowledge, via its local agent, of the existence of the Liberty National policy. Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the motion for summary judgment presented by Liberty National Fire Insurance Company be, and the same hereby is GRANTED. Accordingly, the plaintiff, Casualty Indemnity Exchange Insurance Company shall take nothing by way of its complaint and the Clerk is directed to enter JUDGMENT in favor of Liberty National Fire Insurance Company. Each party shall bear their costs.