826 P.2d 1315

**AETNA CASUALTY & SURETY COMPANY, a foreign corporation, and C.A. (Skip) Smyser, Plaintiffs–Respondents–Cross Appellants,**

v.

**MUTUAL OF ENUMCLAW INSURANCE COMPANY, a foreign corporation, Defendant–Appellant–Cross Respondents.**

No. 18939.

Supreme Court of Idaho, Boise, January 1992 Term.

March 2, 1992.

Cantrill, Skinner, Sullivan & King, Boise, for defendant-appellant-cross-respondents. Robert D. Lewis argued.

Imhoff & Lynch, Boise, Idaho, attorneys for plaintiffs-respondents-cross-appellants. James B. Lynch argued.

McDEVITT, Justice.

The issues to be resolved are:

I. Was the district court correct in ruling that an insurer who has performed its duty to defend may require contribution for the cost of the defense from another insurer who has a duty to defend the same insured and has defended but has not incurred equivalent costs in doing so?

II. Was the district court correct in ruling that the question of indemnification coverage is immaterial in the present action?

## NATURE OF THE CASE AND BACKGROUND

Sometime before late November of 1985, Smyser was approached by representatives of the David Leroy For Governor campaign about assistance in the publication of a press release. The press release dealt with certain factual assertions regarding the design and administration of a public opinion survey that was commissioned by the Citizens For Andrus campaign. On November 25, 1985, Smyser published this press release.

On February 12, 1986, Smyser was served with a summons and complaint filed by the Portland polling firm, T.H. Research, that conducted the public opinion survey. The complaint alleged that by Smyser's statements in the press release, he had defamed T.H. Research, and it prayed for damages in the amount of $450,-000.00. The complaint was filed in United States District Court.

At this time, Smyser was a principal of the law firm Connolly & Smyser, Chartered, which was insured by Aetna under a "business owner's policy." Also at this time, Smyser was insured by Enumclaw under a "homeowner's policy."

After receiving the T.H. Research complaint, Aetna and Enumclaw were notified of the claim—Aetna by way of an Accord Loss Memorandum, dated February 25, 1986, which was received from Smyser's insurance agent, and Enumclaw by way of a conversation with Smyser's attorney and a letter, dated April 23, 1986, from that attorney. After Aetna was notified, it determined that a potential for coverage under its policy existed, and it hired counsel to defend Smyser in the T.H. Research defamation suit. After Enumclaw was notified, it hired counsel to defend Smyser in the T.H. Research suit pursuant to a reservation of rights letter dated May 27, 1986.

Ultimately, the United States District Court granted summary judgment in favor of Smyser. Aetna spent $30,522.04 for its defense, and Enumclaw spent $5,220.00.

On December 2, 1988, Aetna and Smyser filed a complaint against Enumclaw seeking reimbursement of defense costs. In the complaint, there were three causes of action, to wit: count one, breach of contract; count two, unjust enrichment; and, count three, bad faith. Aetna and Smyser requested judgment for $30,522.04, punitive damages, and attorney fees for this action.

On February 14, 1989, Enumclaw filed its answer. Among other things, Enumclaw admitted that it had a duty to defend Smyser in the T.H. Research lawsuit, and it asserted that it fulfilled that duty.

Enumclaw filed its motion for summary judgment on December 14, 1989. Aetna and Smyser filed their motion for summary judgment on January 22, 1990. The hearing on the cross motions was held on January 26, 1990. The court filed its memorandum decision granting summary judgment to Enumclaw on counts one and three, and to Aetna and Smyser on count two. In reaching its decision, the court found that "it is undisputed that Enumclaw assisted in providing a defense for Smyser, however allegedly minimal this assistance may have been." As to the first issue to be resolved, the district court said that it "adopts the rule allowing an insurer who has performed its duty to defend its insured to require contribution for the cost of defense from another insurer who has a similar obligation to the same insured but has not

performed it to the same extent." The district court noted that "there appears to be no reported Idaho precedent on this question...." As to the second issue to be resolved, the district court ruled that "[t]he question of indemnification coverage is immaterial in the present action. The only relevant inquiry is whether a potential for coverage existed under either or both policies which would thus invoke the duty to defend." On August 22, 1990, judgment was filed.

On September 28, 1990, Enumclaw filed its notice of appeal pursuant to I.A.R. 11(a)(1). On October 3, 1990, Aetna filed its notice of appeal and cross appeal pursuant to I.A.R. 11 and 15.

## ANALYSIS

### I.

### AN INSURANCE COMPANY THAT HAS PERFORMED ITS DUTY TO DEFEND AN INSURED MAY NOT REQUIRE CONTRIBUTION FOR THE COST OF THE DEFENSE FROM ANOTHER INSURER WHO HAS A DUTY TO DEFEND THE SAME INSURED AND HAS DEFENDED, BUT NOT INCURRED EQUIVALENT COSTS IN DOING SO

■ We are faced with a situation where an insured, in his capacity as a homeowner and as a business owner, is insured by two insurance companies that both recognized a duty to defend and did defend the insured in a defamation suit. In its brief, Aetna argues that the case of *Viani v. Aetna Ins. Co.*, 95 Idaho 22, 501 P.2d 706 (1972), *overruled on other grounds, Sloviaczek v. Estate of Puckett*, 98 Idaho 371, 565 P.2d 564 (1977), controls this case. The *Viani* case arose from a gun accident involving the plaintiff, Mr. Viani, and the defendant, Mr. Bowles. At the time of the accident, Bowles was insured by Aetna under a homeowner's policy and by American Casualty under a comprehensive general-automobile liability policy, while Viani was insured by Allstate under a "Crusader" automobile liability policy. After the gun accident, Bowles notified the insurance agent who had sold him both the Aetna and the American Casualty policies. Thereafter, Viani filed a negligence suit against Bowles. After receiving notice, Aetna tendered the defense of the suit to Allstate. Allstate accepted and defended Bowles. Ultimately, the jury returned a verdict of $14,622 against Bowles.

After the verdict, Viani unsuccessfully attempted to execute the judgment against Bowles. Viani then filed a suit against the three insurance companies, bringing American Casualty into the series of events as a party for the first time. The district court determined that each of the insurance companies should pay for one-third (⅓) of the costs of the defense. On appeal to this Court, we held American Casualty not liable, stating that "it is just for Allstate and Aetna to pay one-half of the defense costs regardless of the applicable limits of their respective policies." *Viani*, 95 Idaho at 37, 501 P.2d at 721.

The *Viani* case is clearly distinguishable from the present case, as *Viani* involves a multiple insurer situation where one of the insurers (Aetna) *did not defend*. In the present case, both Aetna and Enumclaw defended Smyser in the T.H. Research defamation suit. The district court found that "Aetna recognized a potential for coverage under its policy and assumed defense of the suit," and the court found that "Enumclaw also recognized a duty to defend" and that "it is undisputed that Enumclaw assisted in providing a defense for Smyser." These are findings of fact that we, based upon the record before us, cannot say are clearly erroneous, and, thus, will not set aside. I.R.C.P. 52(a).

Before adopting the rule of contribution, the district court recognized a split of authority on the particular question. In one line of authority, contribution is denied because "each insurer's obligation to defend and indemnify a mutually insured is separate and distinct. These jurisdictions hold that absent contractual obligations between the insurers, each has an independent duty not affected by the conduct of the other." The other line of authority allows contribution because "when two in-

surers insure the same risk, but one chooses *not* to defend, the defending insurer is equitably entitled to contribution by the *non*-defending insurer." (Emphasis added.) For this second line of authority, the district court cites to *Forum Ins. Co. v. Ranger Ins. Co.*, 711 F.Supp. 909 (N.D.Ill. 1989); *National Indem. Co. v. St. Paul Ins. Co.*, 150 Ariz. 458, 724 P.2d 544 (1986); *Marwell Constr. v. Underwriters at Lloyd's, London*, 465 P.2d 298 (Alaska 1970); *Continental Cas. Co. v. Zurich Ins. Co.*, 57 Cal.2d 27, 366 P.2d 455, 17 Cal.Rptr. 12 (1961). The line of authority from which the district court adopted its rule is, however, clearly inapplicable to the situation that we face.

The *National Indem.* case arose from two lawsuits filed against Long's Portable Stalls, Incorporated, due to the electrocution of horses. "Two insurance companies provided coverage for these incidents. Under the policies issued by National and St. Paul, each was obligated to undertake the defense of Long. National defended Long in both actions; *St. Paul refused to participate in the defense.*" *National Indem.*, 150 Ariz. at 458, 724 P.2d at 544 (emphasis added). Thereafter, National brought suit against St. Paul "to compel St. Paul to contribute to the cost of defense borne by National in defending their mutual insured on claims covered by both insurers." *National Indem.*, 150 Ariz. at 458, 724 P.2d at 544. The Arizona Supreme Court held that "the insurer which has performed the duty to provide a defense to its insured should be able to compel contribution for a share of the cost of defense from another insurer who had a similar obligation to the same insured but *failed* to perform it." *National Indem.*, 150 Ariz. at 459, 724 P.2d at 545 (emphasis added).

The *Continental* case arose from a personal injury action brought by Roderick Gudger against Jack Hiatt. In this action, Hiatt was defended by Continental. Subsequently, Continental brought a declaratory relief suit against two other insurance companies, Zurich Insurance Company and General Insurance Company of America. "Hiatt had demanded of both Zurich and General that they defend the action and pay any judgment that might be rendered against him, but both *refused.*" *Continental*, 57 Cal.2d at 31, 366 P.2d at 457, 17 Cal.Rptr. at 14 (emphasis added). The California Supreme Court stated that "no insurer which deliberately *breaches* its obligation to the insured should be permitted thereby to profit, whether at the expense of the insured, or of an insurer which faithfully discharges its obligation." *Continental*, 57 Cal.2d at 38, 366 P.2d at 462, 17 Cal.Rptr. at 19 (emphasis added).

The *Marwell* case arose from a personal injury suit. Lyman Woods was employed by Al Renk & Sons Trucking. During the course of his duties, he was injured while transporting supplies to a hydroelectric project being constructed by Marwell Construction. Al Renk & Sons Trucking was insured by General Insurance Company of America and Underwriters at Lloyd's, London. Marwell Construction was insured by General Accident Fire & Life Assurance Corporation. After the injury, Mr. Woods filed suit against Marwell. "Marwell's defense was tendered to General Insurance, who *refused.*" *Marwell*, 465 P.2d at 301 (emphasis added). Instead, General Accident paid the judgment, and then proceeded, in a declaratory action, against General Insurance and Lloyd's. The Alaska Supreme Court stated that "[t]he insurer who *wrongfully breached* its duty to defend would be awarded a bonus for having done so, by having another company bear the entire cost." *Marwell*, 465 P.2d at 313 (emphasis added).

The *Forum* case arose from two separate suits filed against Desnoyers & Associates. Desnoyers was insured, over successive terms, by Forum Insurance Company and Ranger Insurance Company. The defense of the actions was tendered to Forum, which accepted the defense. Thereafter, Desnoyers' insurance agent notified Ranger of the suits, which *"refused* to defend Desnoyers or to contribute to the defense costs incurred by Forum." *Forum*, 711 F.Supp. at 911 (emphasis added). Forum filed a declaratory action against Ranger, claiming that Ranger was obligated to contribute to the costs of defense.

The United States District Court stated that "[u]nder Illinois law an insurer that fulfills its obligations to defend a mutual insured can recover from a co-insurer a share of the costs expended in such a defense as well as any indemnity payment—either under a contribution or subrogation theory." *Forum,* 711 F.Supp. at 914.

The critical distinction between the above cases and the issue we face is, as we have emphasized throughout the discussion, that in the line of authority that the district court followed, an insurance company *breached* its duty to defend, whereas here Enumclaw did *not breach* its duty to defend Smyser in the T.H. Research suit.

For the situation we face, the Idaho rule is clear:

> The proper procedure for the insurer to take is to evaluate the claims and determine whether an arguable potential exists for a claim covered by the policy; if so, then the insurer must immediately step in and defend the suit. At the same time, if the insurer believes that the policy itself provides a basis, i.e., an exclusion, for noncoverage, it may seek declaratory relief.

> . . . . .

> Once it is concluded that an insurer owes its insured a duty to defend, the duty to defend and pay defense costs continues until such time as the insurer can show that the claim against the insured cannot be said to fall within the policy's scope of coverage.

*Kootenai County v. Western Cas. & Sur. Co.,* 113 Idaho 908, 911, 750 P.2d 87, 90 (1988) (quoting *State v. Bunker Hill Co.,* 647 F.Supp. 1064, 1068 (D.Idaho 1986)).

In this case, both Aetna and Enumclaw recognized a potential for coverage under their policies of the T.H. Research suit against Smyser. The record clearly shows that both Aetna and Enumclaw hired counsel to defend Smyser and incurred costs in that defense. The district court found that both companies defended Smyser. Thus, the Idaho rule, as set forth in the *Kootenai* opinion, has been followed.

We therefore conclude that the district court erred when it required Enumclaw to pay for one-half (½) of the total costs of defense of Smyser. Both insurance companies, having fulfilled their duty to defend, although adopting different strategy and tactics, shall pay for their own defense costs.

## II.

## THE DISTRICT COURT WAS CORRECT IN CONCLUDING THAT THE QUESTION OF INDEMNIFICATION COVERAGE IS IMMATERIAL TO THE PRESENT ACTION

■ The district court held that "[t]he question of indemnification coverage is immaterial in the present action." Aetna, as cross-appellant on appeal, raises the issue of "whether [Enumclaw] under its policy had a determinable duty to indemnify Smyser." Aetna argues that the "business pursuits exclusion" of the Enumclaw homeowner's policy, which exclusion Enumclaw cited in a letter to Smyser that purported to reserve Enumclaw's rights to challenge coverage, does not apply.

It is undisputed that both Aetna and Enumclaw defended Smyser. When Aetna was notified of the T.H. Research suit, it determined that a potential for coverage under its policy existed and thus defended. When Enumclaw was notified of the T.H. Research suit, it determined that a potential for coverage under its policy existed and thus defended. Neither insurance company sought declaratory relief. Instead, they made a tactical and strategic decision to defend. Therefore, the *Kootenai* rule controls:

> Once it is concluded that an insurer owes a duty to defend, the duty to defend and pay defense costs continues until such time as the insurer can show that the claim against the insured cannot be said to fall within the policy's scope of coverage.

*Kootenai,* 113 Idaho at 911, 750 P.2d at 90.

The district court was correct in concluding that the question of indemnification

coverage was immaterial to the present action.

For the foregoing reasons, we reverse the decision of the district court requiring Mutual of Enumclaw to pay for one-half (½) of the total costs of defense. Aetna shall pay for the defense costs it incurred, and Enumclaw shall pay for the defense costs it incurred.

Costs to appellant Enumclaw.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.