191 P.3d 866 (2008)
MUTUAL OF ENUMCLAW INSURANCE COMPANY and Commercial Underwriters Insurance Company, Respondents,
v.
USF INSURANCE COMPANY, Petitioner.
No. 80199-1.
Supreme Court of Washington, *867 En Banc.
Argued March 20, 2008.
Decided September 4, 2008.
*870 James Morton Beecher, David R. Collins, Law Offices of Hackett, Beecher, & Hart, Seattle, WA, for Respondents.
John Earl Lenker, Shelley Movae Buckholtz, Mikkelberg Broz Wells & Fryer PLLC, Seattle, WA, for Petitioner.
OWENS, J.
¶ 1 Petitioner USF Insurance Company and respondents Mutual of Enumclaw Insurance Company (MOE) and Commercial Underwriters Insurance Company (CUIC) all insured Dally Homes, Inc., a homebuilder and developer, for a condominium development called Windsong Arbor. After the Windsong Arbor Homeowners' Association (Homeowners) sued Dally for construction defects, Dally settled with MOE and CUIC. Dally intentionally did not tender a claim to USF. MOE and CUIC later brought an action for contribution and subrogation against USF. At issue is whether the "selective tender" rule applies to bar MOE and CUIC's claims or whether the "late tender" rule applies to allow them. Also at issue is whether USF has shown that it was prejudiced as a matter of law by late notice of the claims.
¶ 2 The trial court granted summary judgment to USF on both of the claims, reasoning that "selective tender" applied. The Court of Appeals reversed, holding that the "late tender" rule applied and that summary judgment was improper. We reverse the Court of Appeals as to the contribution claim and hold that the "selective tender" rule applies to bar MOE and CUIC's claim. We then affirm the Court of Appeals insofar as it holds that "late tender" applies to the subrogation claim. We also hold that USF has not shown that late notice prejudiced it as a matter of law.

I. FACTS
¶ 3 In the late 1990s, Dally developed and built a condominium complex in Kent known as Windsong Arbor. Dally obtained a general insurance policy from USF, which bound on January 18, 2000. Prior to that, CUIC insured Dally, and Dally also had coverage from MOE through one of its subcontractors on the Windsong Arbor project. In late 1999, the Homeowners' board became aware that it was nearing the end of the statute of limitations period for a suit against Dally for construction defects in the development. James Skeen, the board president, began to look for an attorney to represent the Homeowners.
¶ 4 Skeen called Richard Beal, an attorney who represented Dally on an ongoing basis, to ask if Beal might represent the Homeowners in a suit against Dally. Beal declined due to his existing professional relationship with Dally, and he received permission to notify Dally of the potential suit.
*871 ¶ 5 In the spring of 2000, the Homeowners sued Dally. Beal advised Dally not to tender the claim to USF. Beal felt that tender was improper because he knew of the potential suit before the USF policy bound. Dally tendered the claim to other insurers but not to USF.
¶ 6 In January 2002, Dally, MOE, and CUIC entered into an agreement to fund the settlement of the Homeowners' suit against Dally. In the agreement, Dally assigned its rights "against non-participating primary or Additional Insured insurers [sic]" to MOE and CUIC. Clerk's Papers (CP) at 445. The assignment of rights did not specifically name USF.
¶ 7 MOE and CUIC instituted contribution litigation against all of Daily's other known insurers, but they were unaware of the USF policy until that litigation was complete. MOE and CUIC discovered the USF policy, and in February 2004, they sent a letter to USF demanding partial reimbursement of their indemnity and defense costs. The letter marked the first time that USF had any notice of the claim.
¶ 8 MOE and CUIC filed an action against USF for subrogation and equitable contribution in the King County Superior Court.[1] USF moved for summary judgment on both claims. The trial court adopted the so-called "selective tender" rule, which states that where an insured has not tendered a claim to an insurer, that insurer is excused from its duty to perform under the policy or to contribute to a settlement of the claim. CP at 579; see Cas. Indem. Exch. Ins. Co. v. Liberty Nat'l Fire Ins. Co., 902 F.Supp. 1235, 1239 (D.Mont.1995). The trial court granted the motion for summary judgment in full without distinguishing between the subrogation and equitable contribution claims. CP at 576-79.
¶ 9 The Court of Appeals, Division One, reversed. Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 137 Wash.App. 352, 363, 153 P.3d 877 (2007) (MOE v. USF I). It concluded that Washington's "late tender" rule was incompatible with the "selective tender" rule. Id. at 359-61, 153 P.3d 877. "Late tender" provides that an insurer must perform under the insurance contract even where an insured breaches the timely notice provision of the contract unless the insurer can show actual and substantial prejudice due to the late notice. See Unigard Ins. Co. v. Leven, 97 Wash.App. 417, 427, 983 P.2d 1155 (1999). The Court of Appeals reasoned that the "selective tender" rule could not apply where there had been an assignment of rights. MOE v. USF I, 137 Wash.App. at 360, 153 P.3d 877. The court did not individually analyze the subrogation and equitable contribution claims.[2] Upon USF's petition, we granted review. 162 Wash.2d 1019, 178 P.3d 1033 (2008).

II. ANALYSIS

A. Standard of Review
¶ 10 This court reviews an order granting summary judgment de novo. City of Seattle v. Mighty Movers, Inc., 152 Wash.2d 343, 348, 96 P.3d 979 (2004). Under CR 56(c), a court may grant summary judgment if the record presents no genuine issue of material fact and the law entitles the moving party to judgment. Id. "In conducting this inquiry, this court must view all facts *872 and [draw] reasonable inferences in the light most favorable to the nonmoving party." Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004).

B. Do the "late tender" and "selective tender" rules apply to MOE and CUIC's claims?
¶ 11 USF's central contention is that because Dally had not tendered its claim to USF at the time of the settlement agreement, MOE and CUIC now have no right to seek payment from USF. MOE and CUIC's rights turn on whether the "late tender" rule or the "selective tender" rule applies to their claims.
¶ 12 MOE and CUIC made claims for both subrogation and equitable contribution. The trial court granted summary judgment as to both claims. Though the Court of Appeals recognized that there had been two claims, MOE v. USF I, 137 Wash.App. at 358, 153 P.3d 877, it did not do separate analyses of the claims, and it held only that MOE and CUIC could "maintain an action ... for contribution,"[3]id. at 361, 153 P.3d 877. However, the distinction between subrogation and contribution is critical to our analysis. The type of subrogation presented in this case involves the assignment of the insured's rights to an insurer, while the contribution here is one insurer's right against another liable insurer, and thus different rules apply to each claim.[4]

1. Equitable Contribution
¶ 13 Equitable contribution refers to the right of one party to recover from another party for a common liability. Fireman's Fund Ins. Co. v. Md. Cas. Co., 65 Cal.App.4th 1279, 1293, 77 Cal.Rptr.2d 296 (1998). In the context of insurance law, contribution allows an insurer to recover from another insurer where both are independently obligated to indemnify or defend the same loss.[5] Importantly, contribution is a right of the insurer and is independent of the rights of the insured. See Signal Cos., Inc. v. Harbor Ins. Co., 27 Cal.3d 359, 369, 612 P.2d 889, 165 Cal.Rptr. 799 (1980) ("`The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other.... Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.'" (alteration in original) (quoting Am. Auto. Ins. Co. v. Seaboard Sur. Co., 155 Cal.App.2d 192, 195-96, 318 P.2d 84 (1957))).
¶ 14 In deciding whether one insurer is liable for equitable contribution to another, "the inquiry is whether the nonparticipating coinsurer `had a legal obligation ... to provide [a] defense [or] indemnity coverage for the ... claim or action prior to [the date of settlement].'" Safeco Ins. Co. of Am. v. Superior Court, 140 Cal.App.4th 874, 879, 44 Cal.Rptr.3d 841 (2006) (second emphasis added) (alterations in original) (quoting Am. Cont'l Ins. Co. v. Am. Cas. Co., 86 Cal. App.4th 929, 938, 103 Cal.Rptr.2d 632 (2001)), review denied, 2006 Cal. LEXIS 10468.[6] Equity *873 provides no right for an insurer to seek contribution from another insurer who has no obligation to the insured. See Aetna Cas. & Sur. Co. v. Mut. of Enumclaw Ins. Co., 121 Idaho 603, 605-06, 826 P.2d 1315 (1992) (recognizing that equitable contribution arises in cases where an insurer has breached its obligation to defend the insured against liability (citing Forum Ins. Co. v. Ranger Ins. Co., 711 F.Supp. 909 (N.D.Ill. 1989); Marwell Constr., Inc. v. Underwriters at Lloyd's, London, 465 P.2d 298 (Alaska 1970); Cont'l Cas. Co. v. Zurich Ins. Co., 57 Cal.2d 27, 366 P.2d 455, 17 Cal.Rptr. 12 (1961))); Nat'l Indem. Co. v. St. Paul Ins. Cos., 150 Ariz. 458, 459, 724 P.2d 544 (1986) ("When an insurer has a duty to defend the insured, there should be no reward to the insurer for breaching that duty." (emphasis added)).
¶ 15 Washington courts have said that an insurer's duty to defend "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." Leven, 97 Wash.App. at 425, 983 P.2d 1155. However, "`[A]n insurer cannot be expected to anticipate when or if an insured will make a claim for coverage; the insured must affirmatively inform the insurer that its participation is desired.'" Grifin v. Allstate Ins. Co., 108 Wash.App. 133, 140, 29 P.3d 777, 36 P.3d 552 (2001) (alteration in original) (quoting Leven, 97 Wash.App. at 427, 983 P.2d 1155). Thus, "breach of the duty to defend cannot occur before tender." Id. at 141, 29 P.3d 777. The duties to defend and indemnify[7] do not become legal obligations until a claim for defense or indemnity is tendered. Further, the insurer who seeks contribution does not sit in the place of the insured and cannot tender a claim to the other insurer. Thus, if the insured has not tendered a claim to an insurer prior to settlement or the end of trial, other insurers cannot recover in equitable contribution against that insurer.
¶ 16 This rule is largely consistent with the "selective tender" rule employed by the trial court. That rule states that where an insured has not tendered a claim to an insurer, that insurer is excused from its duty to contribute to a settlement of the claim.[8]Casualty, 902 F.Supp. at 1239.
¶ 17 We agree with USF that this rule has sound policy underpinnings. Selective tender preserves the insured's right to invoke or not to invoke the terms of its insurance contracts. An insured may choose not to tender a claim to its insurer for a variety of reasons. Like a driver involved in a minor accident, an insured may choose not to tender in order to avoid a premium increase. The insured may also want to preserve its policy limits for other claims, or simply to safeguard its relationship with its insurer. Whatever its reasons, an insured has the prerogative not to tender to a particular insurer.
¶ 18 The Court of Appeals rejected the "selective tender" rule and concluded that the "late tender" rule dictated that MOE and CUIC's equitable contribution claim should proceed. The "late tender" rule provides that an insured's breach of an insurance contract through failure to notify the insurer of a claim does not relieve the insurer *874 of the obligation to perform under the insurance contract unless the insured can prove that the late notice caused it actual and substantial prejudice. See Leven, 97 Wash. App. at 427, 983 P.2d 1155; Griffin, 108 Wash.App. at 140, 29 P.3d 777; Canron, Inc. v. Fed. Ins. Co., 82 Wash.App. 480, 485, 918 P.2d 937 (1996); see also Sears, Roebuck & Co. v. Hartford Accident & Indem. Co., 50 Wash.2d 443, 453-55, 313 P.2d 347 (1957) (performing prejudice analysis in dicta).
¶ 19 This court explained the underlying rationale for the "late tender" rule in Oregon Automobile Insurance Co. v. Salzberg, 85 Wash.2d 372, 376-77, 535 P.2d 816 (1975):
[I]nsurance policies ... are simply unlike traditional contracts, i.e., they are not purely private affairs but abound with public policy considerations, one of which is that the risk-spreading theory of such policies should operate to afford to affected members of the publicfrequently innocent third personsthe maximum protection possible consonant with fairness to the insurer. It is manifest that this public policy consideration would be diminished... if the insurer were relieved of its responsibilities although it is not prejudiced by the insured's actions or conduct in regard to its investigation or presentation and defense of the tort case. Such relief, absent a showing of prejudice, would be tantamount to a questionable windfall for the insurer at the expense of the public.
(Citation omitted.)
¶ 20 The rationale for the "late tender" rule does not apply to claims of equitable contribution. As noted above, equitable contribution is a right of one insurer to collect from another insurer on a loss that both insurers are concurrently obligated to cover. When an insurer brings a contribution claim against another insurer, the first insurer has already fully covered the loss and the danger to the public has been avoided. The insurers themselves are not the kind of "innocent third [party]" to which the Salzberg court referred. Each insurer undertook contractual responsibility to cover the entire loss, and each received consideration for doing so. An insurer that expressly agreed to cover an entire loss is not harmed by being obliged to do so.
¶ 21 Additionally, an insurer's right to contribution is the insurer's right alone. See Signal Cos., 27 Cal.3d at 368, 165 Cal.Rptr. 799, 612 P.2d 889. The insurer, acting merely for itself, and not under an assignment of the insured's rights, does not have the right to tender a claim to another insurer. The "late tender" rule, which allows an insured to tender at any time (subject to prejudice analysis) is of no help to an insurer, who never had the right to tender at all.
¶ 22 In sum, because Dally chose not to tender to USF, USF had no legal obligation to defend or indemnify Dally at the time of the settlement. Accordingly, we hold that MOE and CUIC do not have a right to equitable contribution from USF.

2. Subrogation
¶ 23 "Subrogation" is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." BLACK'S LAW DICTIONARY 1467 (8th ed.2004). Subrogation has two distinct types: conventional subrogation, which arises by contract, and equitable subrogation, which arises by operation of law. Mahler v. Szucs, 135 Wash.2d 398, 412, 957 P.2d 632, 966 P.2d 305 (1998) (citing Ross v. Jones, 174 Wash. 205, 216, 24 P.2d 622 (1933)); see also BLACK'S, supra, at 1468.
¶ 24 Because conventional subrogation can arise only by agreement, some jurisdictions have found it to be synonymous with assignment. See Stilson v. Hodges, 934 P.2d 736, 738 (Wyo.1997); Westchester Fire Ins. Co. v. Allstate Ins. Co., 236 Conn. 362, 371, 672 A.2d 939 (1996). An insurer entitled to subrogation "stands in the shoes" of the insured and is entitled to the same rights and subject to the same defenses as the insured. Fireman's Fund, 65 Cal.App.4th at 1292, 77 Cal.Rptr.2d 296. The effect of assignment under Washington law is substantially the same: "An assignee steps into the shoes of the assignor, and has all of the rights of the *875 assignor." Estate of Jordan v. Hartford Accident & Indem. Co., 120 Wash.2d 490, 495, 844 P.2d 403 (1993) (citing Morse Electro Prods. Corp. v. Beneficial Indus. Loan Co., 90 Wash.2d 195, 198, 579 P.2d 1341 (1978)). While we need not decide whether conventional subrogation and assignment are equivalent in all respects, this court recognizes that an insurer who receives full contractual assignment of an insured's rights may bring a conventional subrogation claim to enforce those rights.
¶ 25 Assuming that Dally assigned its rights to the USF policy,[9] the "late tender" rule allows MOE and CUIC to pursue their conventional subrogation claim. As noted above, the "late tender" rule recognized in Washington provides that even where an insured fails to give an insurer timely notice of a claim, the insurer is not relieved of its obligation to perform on the policy unless it can show that the late notice actually and substantially prejudiced it. See, e.g., Leven, 97 Wash.App. at 427, 983 P.2d 1155. Under the rule, Dally had the right to tender its claim at any time, as long as the late tender did not prejudice its insurers. MOE and CUIC acquired this same right to late tender when they became Daily's assignees and conventional subrogees. See Jordan, 120 Wash.2d at 495, 844 P.2d 403 (citing Morse, 90 Wash.2d at 198, 579 P.2d 1341). It follows that MOE and CUIC may now seek USF's performance of the insurance contract through a conventional subrogation claim.
¶ 26 The "selective tender" rule does not apply to this claim. Conventional subrogation claims rest on a contractual assignment of the insured's rights to the insurer; thus, the "insured's right to control tender" rationale for the "selective tender" rule is not persuasive in this context. When Dally assigned its rights under its other insurance policies to MOE and CUIC in the settlement agreement, it knowingly relinquished whatever right it may have had to control the enforcement of its insurance contracts, and it gave that right to MOE and CUIC.
¶ 27 In fact, we must not apply "selective tender" in situations such as this in order to preserve the value of an insured's rights under its insurance policies. Dally's assignment of its rights was part of the consideration it provided in its settlement agreement with MOE and CUIC. In exchange, MOE and CUIC agreed to fund the immediate payment of the Homeowners' claims, releasing Dally from liability. The assignment was a key component of a bargained-for exchange. To deprive the assignees of the full use of assigned rights would be to deprive insureds/assignors like Dally of a valuable bargaining tool in settlement agreements.[10]
*876 ¶ 28 We hold that the "late tender" rule applies to conventional subrogation claims; thus, MOE and CUIC may pursue their subrogation claim against USF.

C. Prejudice
¶ 29 USF argues that even if the "late tender" rule applies, summary judgment was still proper because it was prejudiced as a matter of law when it did not receive timely notice of the Homeowners' claims or the subsequent contribution litigation. As noted above, even where an insured breaches a "prompt notice" provision of an insurance policy,[11] the insurer is not relieved of its duties under the insurance contract unless it can show that the late notice caused it actual and substantial prejudice. See Leven, 97 Wash.App. at 427, 983 P.2d 1155; Griffin, 108 Wash.App. at 140, 29 P.3d 777; Canron, 82 Wash.App. at 485, 918 P.2d 937; see also Sears, 50 Wash.2d at 453-55, 313 P.2d 347 (performing prejudice analysis in dicta).
¶ 30 Whether or not late notice prejudiced an insurer is a question of fact, and it will seldom be decided as a matter of law. Tran v. State Farm Fire & Cas. Co., 136 Wash.2d 214, 228, 961 P.2d 358 (1998). The insurer has the burden of proving actual and substantial prejudice from the breach. Salzberg, 85 Wash.2d at 377, 535 P.2d 816.[12] This court has not defined the precise set of circumstances under which an insured's breach of a notice provision constitutes prejudice as a matter of law.
¶ 31 In Sears, the first case to address "prejudice" in the present context, a customer fell and injured herself in the Sears parking lot. 50 Wash.2d at 454, 447, 313 P.2d 347. She sued Sears four months later, in October 1952. Id. at 447, 313 P.2d 347. Initially, Sears did not know it was covered by the insurance policy, and it did not inform the insurer of the suit until less than a week before the trial. Id. This court said that because the late notice deprived the insurer of the opportunity to investigate and to choose the counsel who would prepare and present the defense, the insurer was prejudiced as a matter of law. Id. at 451-54, 313 P.2d 347. This court also cited with approval the trial court's conclusion that the insured need not prove that it would have reached a different result had it been given the chance to defend. Id. at 453, 313 P.2d 347. However, we recognized in the Sears opinion itself that the entire prejudice analysis was dicta. Id. at 454, 313 P.2d 347.
¶ 32 Subsequent cases show that our rule is not as stringent as the Sears dicta suggested. In Salzberg, the insured had an automobile accident in May 1970 in which his passenger was injured. 85 Wash.2d at 373, 535 P.2d 816. The insured then falsely reported to his insurer that the vehicle had been stolen, and the insurer paid his claim. Id. It *877 was not until September 1970 that the insurer learned that the original claim had been false. Id. at 374, 535 P.2d 816. The insurer brought an action for a declaratory judgment that it did not have a duty to defend or indemnify the insured, and the trial court stayed the injured passenger's tort case pending disposition of the declaratory judgment action. Id. at 373, 535 P.2d 816. We held that there was "nothing in the record" to support a finding of prejudice, and thus that summary judgment for the insurer had been improper. Id. at 377, 535 P.2d 816. At a minimum, Salzberg establishes that this court will not find prejudice as a matter of law even where the insurer could not investigate an accident until four months after the fact and a tort claim had already been filed at the time of notice. The insurer must provide some additional facts to show prejudice as a matter of law.
¶ 33 In Public Utility District No. 1 of Klickitat County v. International Insurance Co., 124 Wash.2d 789, 794-95, 881 P.2d 1020 (1994) (PUD # 1), a group of bondholders sued a group of public utility districts (PUDs), and the PUDs settled with the bondholders. One of the PUDs' insurers alleged that it had no duty to perform under the insurance policy because the PUDs had settled without its consent, in breach of a policy term. Id. at 795-96, 881 P.2d 1020. This court noted that "`prejudice will be presumed only in extreme cases'" and held that the trial court had ruled correctly that there was a question of fact as to prejudice where the insurer's policy covered only a small portion of the settlement total and the settlement itself had been found "fair and reasonable" by a federal court. Id. at 805, 881 P.2d 1020 (quoting Felice v. St. Paul Fire & Marine Ins. Co., 42 Wash.App. 352, 359, 711 P.2d 1066 (1985)). PUD # 1 stands for the proposition that even where litigation has been completed, there are circumstances in which this court will not find prejudice as a matter of law.
¶ 34 Perhaps due to limited guidance from this court, the Court of Appeals decisions on prejudice have varied widely. The results of these cases often turn on the courts' opinions about whether the insurer must show a specific detriment as the result of the prejudice or if it simply needs to show that it lost an opportunity to investigate or defend. For example, in Canron, the Court of Appeals said that "an insurer must adduce affirmative proof of an advantage lost or disadvantage suffered as a result of the delay, which has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to coverage or liability." 82 Wash. App. at 491-92, 918 P.2d 937 (holding no substantial evidence for jury to find prejudice). In contrast, in Northwest Prosthetic & Orthotic Clinic, Inc. v. Centennial Insurance Co., 100 Wash.App. 546, 997 P.2d 972 (2000), the same division of the Court of Appeals said that "[w]hat is critical is for the insurer to show that it lost the opportunity to conduct a meaningful evaluation of its own." Id. at 553, 997 P.2d 972 (holding that insurer was prejudiced as a matter of law).
¶ 35 We largely agree with the Canron court's more flexible formulation of the rule for prejudice. The Nw. Prosthetic rule oversimplifies the law on "prejudice" in this state. Nw. Prosthetic relied on Sears for its conclusion that the lost opportunity to investigate or prepare a defense constitutes prejudice as a matter of law. Id. at 552-54, 997 P.2d 972. As discussed above, the Sears reasoning was dicta, and our subsequent cases have shown that "prejudice" analysis is much more nuanced. Indeed, this court and the Court of Appeals have explicitly and implicitly relied on a variety of factors when considering whether an insured's breach prejudiced an insurer. Were damages concrete or nebulous? Id. at 554-55, 997 P.2d 972 (distinguishing between property damage and defamation). Was there a settlement or did a neutral decision maker calculate damages; what were the circumstances surrounding the settlement? Id. (noting that where circumstances surrounding a settlement by the parties indicated fraud, the settlement amount was much less reliable than the result of a trial on damages); PUD # 1, 124 Wash.2d at 805, 881 P.2d 1020 (pointing out that court had approved settlement). Did a reliable entity do a thorough investigation of the incident? Canron, 82 Wash.App. at 489-90, 918 P.2d 937 (holding that lost ability to investigate was not prejudicial per se when *878 extensive investigative records were available). Could the insurer have eliminated liability if given timely notice? Leven, 97 Wash.App. at 431, 983 P.2d 1155 (finding prejudice where insurer did not have opportunity to argue to the Department of Ecology that its insured was not a "potentially liable party" under the model toxics control act, Laws of 1989, ch. 2). Could the insurer have proceeded differently in the litigation? Pulse v. Nw. Farm Bureau Ins. Co., 18 Wash.App. 59, 61-62, 566 P.2d 577 (1977) (reversing trial court's determination of prejudice as a matter of law). This is not an exhaustive list, nor does it indicate our wholesale approval of the cited cases, but it illustrates that many factors may determine whether an insurer was actually prejudiced.
¶ 36 We hold that in order to show prejudice, the insurer must prove that an insured's breach of a notice provision had an identifiable and material detrimental effect on its ability to defend its interests. The rule will manifest itself differently depending on the kind of prejudice an insurer claims. If the insurer claims that its own counsel would have defended differently, it must show that its participation would have materially affected the outcome, either as to liability or the amount of damages. If the insurer claims that it was deprived of the ability to investigate, it must show that the kind of evidence that was lost would have been material to its defense.[13] This rule effectuates the longstanding Salzberg rule that the insurer has the burden of proving actual and substantial prejudice,[14] 85 Wash.2d at 377, 535 P.2d 816.
¶ 37 In this case, USF has not demonstrated that it was prejudiced as a matter of law. It has shown that it did not have notice of the claim against Dally until 2004, nearly four years after the initial complaint, two years after Dally's settlement with MOE and CUIC, and some time after MOE and CUIC's contribution litigation with the other insurers was complete. However, it has not shown how that delay specifically deprived it of the ability to put forth defenses to coverage or to contest the value of the damages, etc. It may well do so successfully at trial, but on the record before us we cannot say that USF has proved prejudice as a matter of law.

III. CONCLUSION
¶ 38 The "selective tender" rule applies to contribution, and it bars MOE and CUIC's equitable contribution claim because Dally chose not to tender to USF before the settlement. We reverse the Court of Appeals and affirm the trial court's grant of summary judgment on the equitable contribution claim. However, the "late tender" rule applies to conventional subrogation, and it allows MOE and CUIC, standing in the shoes of Dally, to tender at any time, subject only to prejudice analysis. We affirm the Court of Appeals reversal of summary judgment on the conventional subrogation claim. We further hold that USF has not shown that it was prejudiced as a matter of law. We remand *879 to the trial court for further proceedings consistent with this opinion.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, CHARLES W. JOHNSON, MARY E. FAIRHURST, BARBARA A. MADSEN, JAMES M. JOHNSON, RICHARD B. SANDERS, DEBRA L. STEPHENS, TOM CHAMBERS, JJ.
NOTES
[1] Despite the fact that MOE and CUIC's demand letter to USF requested reimbursement "under theories of assignment, equitable contribution and/or subrogation," CP at 402 (emphasis added), MOE and CUIC did not include a breach of contract claim under its assigned rights to the USF insurance policy. Equitable contribution and subrogation were the only claims in the complaint. We analyze this case under the rubric of equitable contribution and subrogation because that is how the parties have framed the claims from the beginning. Note that the analysis below applies to conventional subrogation, not to the more common doctrine of equitable subrogation. Also note that contribution and subrogation in the insurance context may differ markedly from traditional notions of these concepts in tort law or even in contract law. We do not intend this opinion to affect general tort or contract law.
[2] The Court of Appeals also reviewed the trial court's denial of MOE and CUIC's motion for summary judgment to preclude the "known loss" defense. "Known loss" relieves an insurer of liability where the insured had knowledge of the risk or loss prior to the time the policy bound. The Court of Appeals affirmed the trial court, and that decision is not under review in this court.
[3] This may have been because MOE and CUIC's briefing also failed to distinguish the claims. MOE and CUIC did assign error to the trial court's entire grant of summary judgment at the Court of Appeals, Br. of Appellants at 1, and we accepted review as to whether "the doctrine of selective tender appl[ies]" generally, Pet. for Review at 2. We therefore appropriately consider the subrogation claim here.
[4] "It is ... difficult to think of two legal concepts that have caused more confusion and headache for both courts and litigants than have contribution and subrogation." Fireman's Fund Ins. Co. v. Md. Cas. Co., 65 Cal.App.4th 1279, 1291, 77 Cal.Rptr.2d 296 (1998).
[5] While this court has not expressly adopted the principle of equitable contribution in the context of insurance law, it is the majority rule and has been implicitly followed in the Court of Appeals. See Perez Trucking, Inc. v. Ryder Truck Rental, Inc., 76 Wash.App. 223, 234, 886 P.2d 196 (1994) ("As concurrent primary insurers, both had the duty to defend and to share defense costs equally until judgment or settlement."); Douglas R. Richmond, Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance, 22 PEPPERDINE L.REV. 1373, 1426 (1995) (recognizing majority rule in context of duty to defend and citing cases).
[6] The Court of Appeals cited the same passage but slightly revised the language. See MOE v. USF I, 137 Wash.App. at 359, 153 P.3d 877. It said, "[T]he issue is whether a nonparticipating coinsurer has a legal obligation ... for a claim or action arising before the date of settlement." Id. (emphasis added). The rule as originally stated requires the legal obligation to arise before the settlement, while the Court of Appeals modifications deemphasize that point.
[7] While Griffin involved only the duty to defend, this case involves both the duty to defend and the duty to indemnify. The two duties are distinct in that the duty to defend arises when a complaint contains any allegations that could make an insurer liable to an insured under the policy, while the duty to indemnify arises when an insured is actually liable to a claimant and that claimant's injury is covered by the language of the policy. Hayden v. Mut. of Enumclaw Ins. Co., 141 Wash.2d 55, 64, 1 P.3d 1167 (2000). However, the Griffin court's reasoning that an insurer cannot "`anticipate when or if an insured will make a claim for coverage,'" 108 Wash.App. at 140, 29 P.3d 777 (quoting Leven, 97 Wash.App. at 427, 983 P.2d 1155), applies equally well to the duty to indemnify and the duty to defend.
[8] The Casualty court also stated that "where the insured has failed to tender the defense of an action to its insurer, the latter is excused from its duty to perform under its policy." 902 F.Supp. at 1239. To the extent that this portion of the Casualty rule conflicts with the "late tender" rule in the subrogation or first-party claim contexts (discussed below), we do not agree with it or adopt it.
[9] Though the Court of Appeals assumed that Dally assigned its USF policy rights to MOE and CUIC, see MOE v. USF I, 137 Wash.App. at 360, 153 P.3d 877, this appears to be an open question. None of the parties dispute that Daily's settlement agreement with MOE and CUIC dictates whether Dally assigned its rights to its USF policy. We interpret settlement agreements in the same way we interpret other contracts. Riley Pleas, Inc. v. State, 88 Wash.2d 933, 937-38, 568 P.2d 780 (1977). The meaning of contract provisions is a mixed question of law and fact because we ascertain the intent of the contracting parties "`by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'" Berg v. Hudesman, 115 Wash.2d 657, 667, 801 P.2d 222 (1990) (quoting Stender v. Twin City Foods, Inc., 82 Wash.2d 250, 254, 510 P.2d 221 (1973)). Where the facts are undisputed, such as where the parties agree that the contract language controls and there is no extrinsic evidence to be presented, courts may decide the issue as a matter of law. Here, the trial court has not ruled on whether Dally assigned its rights under the USF policy, and it is not clear whether extrinsic evidence about the circumstances surrounding the settlement would be presented. We recognize that the issue may contain factual components, and we think it best to allow the trial court to rule on it in the first instance.
[10] Waiver. In what it styles as a distinct argument, USF also asserts that Dally waived its right to tender a claim to USF. USF correctly notes that "an assignee takes subject to defenses assertible against the assignor." Lonsdale v. Chesterfield, 99 Wash.2d 353, 359, 662 P.2d 385 (1983). However, USF cites Casualty for the central premise that USF had no indemnity obligation because Dally itself did not tender a claim prior to assignment. Pet. for Review at 7. This argument is merely the "selective tender" argument repeated, and "selective tender" does not apply in the context of conventional subrogation.

Additionally, waiver is the "intentional and voluntary relinquishment of a known right." Panorama Residential Protective Ass'n v. Panorama Corp. of Wash., 97 Wash.2d 23, 28, 640 P.2d 1057 (1982). The record shows that there is a question of fact as to whether Dally knew that it had coverage under the USF policy for the damage in question. Beal, Daily's attorney who directed Dally not to tender the claim to USF, testified that he believed that the policy would not cover the claim because it was a "known loss" at the time the policy bound. CP at 416. Even if waiver of a conventional subrogation claim through failure to tender were possible under Washington law, USF still could not show that Dally waived its coverage as a matter of law. We reject USF's waiver arguments.
[11] Notably, neither party specifically claims that there has been a breach of the "notice" provision of the USF insurance policy. MOE and CUIC do not claim that they are breaching the notice provision, presumably because that might cast them in a negative light. USF maintains that although the policy contains a notice provision, late notice is irrelevant because the "selective tender" rule disposes of all the claims in this case. Br. of Resp't at 33; see Pet. for Review at 19. However, USF also asks this court to find that it was prejudiced as a matter of law by the late notice it received. In order to arrive at the prejudice analysis at all, we must assume that USF will claim a breach of the notice provision as its justification for refusing to reimburse MOE and CUIC.
[12] Salzberg involved breach of a "consent to settle" clause, not a "notice" clause, but this court recognized in Public Utility District No. 1 of Klickitat County v. International Insurance Co., 124 Wash.2d 789, 803, 881 P.2d 1020 (1994) that "notice," "cooperation," and "consent to settle" clauses in insurance policies serve the same purposeto prevent the insured's actions from prejudicing the insurer. Accordingly, this court may look to cases dealing with all three types of clauses in our analysis of the contours of the "prejudice" rule. See id.
[13] We believe that Nw. Prosthetic would likely have come out the same way under the rule we set forth here. In that case, the insured settled with the claimant without notifying the insurer that a settlement conference was impending. 100 Wash.App. at 548, 997 P.2d 972. The facts there indicated fraud in the settlement process. The settlement included a large sum of money for a defamation claim, which had been added in an amended complaint and which was covered under the insurance policy, and no money for a seemingly more central wrongful termination claim, which was not covered by the insurance policy. Id. at 548-49, 997 P.2d 972. The court there noted that after the litigation ended by settlement, discovery tools were no longer available to the insurer, and it largely lost its ability to investigate the defamation claim. Id. at 551, 997 P.2d 972. The insured and the claimant had not conducted reliable investigations because both were motivated to place the entire claim within the covered "defamation" category. The insurer lost the opportunity to investigate facts which would have been material to its defense and was thus prejudiced as a matter of law.
[14] In MacLean Townhomes, LLC v. American States Insurance Co., 138 Wash.App. 186, 189, 156 P.3d 278 (2007), arbitration bound the insurer without notice to the insurer. The arbitration severely limited the insurer's avenues for judicial review. Id. The Court of Appeals found that because the insurer had lost a legal right, it was prejudiced as a matter of law. Id. at 189-90, 156 P.3d 278. Because arbitration did not bind USF here, we need not decide whether loss of a legal right always constitutes prejudice as a matter of law.