# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA, an Indiana corporation, | ) ) ) ) | No. 67906-6-I |
| Respondent, | ) ) ) | |
| v. | ) ) ) | |
| MARK DECOURSEY AND CAROL DECOURSEY, husband and wife, | ) ) ) | |
| Appellants, | ) ) ) | |
| V&E MEDICAL IMAGING, INC., a Washington dissolved corporation; AUTOMATED HOME SOLUTIONS, INC., a Washington dissolved corporation, | ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Defendants. | ) ) | FILED: April 29, 2013 |

VERELLEN, J. — Mark and Carol DeCoursey appeal the trial court's grant of summary judgment to First National Insurance Company of America, contending First National had a duty to pay the default arbitration award the DeCourseys obtained against V&E Medical Imaging, Inc. An insurer has no duty to pay if its insured untimely tenders a suit, provided the insurer can prove actual and substantial prejudice from the late tender. First National did not receive a proper tender of either the DeCourseys' counterclaim against V&E or the ensuing arbitration of the counterclaim. First National

has demonstrated it was actually and substantially prejudiced as a matter of law by the late tender, as it could not assert defenses to the DeCoursey's liability claims or pursue its defenses to coverage. We affirm.

BACKGROUND

## The DeCourseys' Lawsuit

In 2003, Automated Home Solutions, Inc. (AHS, Inc.) sold its assets, including the trade name of Automated Home Solutions, to V&E Medical Imaging Inc., d/b/a Automated Home Solutions (V&E). AHS, Inc. dissolved in January 2004. In 2004, the DeCourseys hired V&E to perform electrical work at their house in Redmond.[1] V&E was already operating under the Automated Home Solutions trade name.

On March 29, 2006, V&E sued the DeCourseys in King County District Court for nonpayment.[2] The DeCourseys counterclaimed,[3] asserting V&E damaged their home and did not complete the project.[4] Before the case went to trial, the court ordered the parties to arbitrate the DeCourseys' counterclaim. V&E's counsel withdrew, and V&E went out of business.

The arbitration took place in May 2010. V&E did not appear. On May 11, 2010, the arbitrator awarded the statutory maximum of $50,000 in damages to the DeCourseys, as well as $41,000 in fees and costs. After the court entered the

---

[1] According to the DeCourseys, they contracted directly with V&E for some of the work, and their general contractor hired V&E for other work.

[2] The case was removed to King County Superior Court in August 2006.

[3] The date of the second amended answer and counterclaims is May 22, 2006.

[4] In the same lawsuit, the DeCourseys also asserted claims against the general contractor and their real estate agent. The DeCourseys prevailed on their claim against the agent, obtaining approximately $1 million in damages.

arbitration award, the DeCourseys, standing in the shoes of V&E, sought to execute on the judgment by pursuing First National.

Notice to First National

First National issued a commercial general liability policy to AHS, Inc. with a policy period of June 2004 through June 2005.[5] The policy states "[t]he following is a complete list of the named insureds" and then lists one insured, "Automated Home Solutions Inc."[6] When the DeCourseys asserted their counterclaim against V&E in May 2006, V&E did not tender the claim to First National. When the court ordered V&E and the DeCourseys to arbitrate the DeCourseys' counterclaims, V&E did not notify First National of the decision.

In April 2010, the DeCourseys contacted Bordelon Insurance, the agency that had placed the commercial general liability coverage with First National, to inquire whether AHS had an insurance policy. Bordelon then contacted First National and explained the existence of a claim against "AHS" by the DeCourseys. First National's claims office issued a claim number. On April 23, 2010, Travis Tonn of First National spoke with Lester Ellis, the registered agent for V&E. Ellis mentioned a possible lawsuit, but told Tonn he had no information about an active lawsuit. Ellis also told

---

[5] AHS, Inc. dissolved in January 2004 but, as a dissolved corporation, it could be sued after dissolution. See RCW 23B.14.340

[6] Clerk's Papers at 90. We need not resolve the parties' lengthy debate whether the insured could have been V&E Medical Imaging Inc. d/b/a AHS, rather than AHS, Inc. The only issue on appeal is whether the late tender under the subject policy prejudiced First National.

Tonn he had received an arbitration notice but instructed First National "not to investigate."[7]

In late May, Ryan Anderson of First National assumed responsibility for the AHS, Inc. file. On June 4, Anderson contacted the DeCourseys about their claim. The DeCourseys responded via letter, requesting information about AHS's coverage, but did not mention the lawsuit or the arbitration.

In early July 2010, the DeCourseys sought the aid of the Office of the Insurance Commissioner (Commissioner) to prompt First National to pay the DeCourseys' arbitration award. On July 14, 2010, two months after the entry of the arbitration award, First National received a call from the Commissioner concerning the DeCourseys' complaint and the arbitration award. The Commissioner then forwarded the DeCourseys' letter to First National, along with the copy of the arbitration award. First National received the order entering the arbitration award on July 23, 2010.

The Declaratory Judgment Action

First National filed this declaratory judgment action in October 2010 to resolve its responsibility to pay the arbitration award. The DeCourseys counterclaimed, contending First National had a duty to pay. The parties filed cross motions for summary judgment. First National contended it was entitled to judgment, as it had not received notice of the suit until after entry of the arbitration award, prejudicing it as a matter of law. The court granted First National's motion and denied the DeCourseys' motion. The court also denied the DeCourseys' motion for reconsideration.

---

[7] Clerk's Papers at 243.

The DeCourseys also argued First National had not timely answered their counterclaim for declaratory judgment and moved to strike. On the same day the court granted summary judgment to First National, the court denied the DeCourseys' motion to strike, finding that "First National's Answer to Defendant's Counterclaims is not an amendment of Plaintiff's complaint."[8]

Representing themselves, the DeCourseys appeal.[9]

## DISCUSSION

We review an order granting summary judgment de novo.[10] A court may grant summary judgment if the record presents no genuine issue of material fact and the law entitles the moving party to judgment.[11] The court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party.[12] We may affirm an order granting summary judgment on any basis supported by the record.[13] Even if an insured breaches a notice provision of an insurance policy, the insurer is not relieved of its duties under the policy unless it shows the late tender caused it actual

---

[8] Clerk's Papers at 885.

[9] The DeCourseys moved for discretionary review, and this court determined that, under RAP 2.2(a), it would treat the motion as a notice of appeal.

[10] Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 418, 191 P.3d 866 (2008). Although the trial court entered findings, they are superfluous on appeal. Hubbard v. Spokane County, 146 Wn.2d 699, 706 n.14, 50 P.3d 602 (2002) ("Although the trial court entered findings of fact, because summary judgment motions are reviewed de novo, these findings are superfluous and need not be considered.").

[11] CR 56(c); USF Ins. Co., 164 Wn.2d at 418.

[12] USF Ins. Co., 164 Wn.2d at 418.

[13] LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

and substantial prejudice.[14] The DeCourseys claim the court erred by granting summary judgment to First National, contending First National received timely tender of their counterclaim and was therefore not prejudiced by late notice.

We note at the outset of our discussion that because the DeCourseys sought to enforce AHS, Inc.'s rights under the First National policy, the DeCourseys are subject to any defense that First National could raise against the insured. They are "chargeable with any breach of condition as well as failure of proof of facts on which liability depends."[15]

Notice and Tender

The First National policy includes, as a condition of coverage, a cooperation clause, which requires the insured to give notice of a suit immediately:

> b.    If a claim is made or "suit" is brought against any insured, you must:
>
>     (2) notify us as soon as practicable. You must see to it that we
>     receive written notice of the claim or "suit" as soon as practicable.
>
> c.    You . . . must:
>
>     (1) Immediately send us copies of any demands, notices,
>     summonses or legal papers received in connection with the claim
>     or "suit."[16]

The notice provisions in an insurance contract exist because an "insurer cannot be expected to anticipate when or if an insured will make a claim for coverage; the insured

---

[14] USF Ins. Co., 164 Wn.2d at 426; Griffin v. Allstate Ins. Co., 108 Wn. App. 133, 140, 29 P.3d 777 (2001).

[15] Burr v. Lane, 10 Wn. App. 661, 670-71, 517 P.2d 988 (1974); see also Atlantic Cas. Ins. Co. v. Oregon Mut. Ins. Co., 137 Wn. App. 296, 304-05, 153 P.3d 211 (2007).

[16] Clerk's Papers at 320.

must affirmatively inform the insurer that its participation is desired."[17]

The DeCourseys contend First National received notice of their counterclaim before arbitration. The DeCourseys' arguments rest on assertions unsupported by the record. They first argue First National should have known of the suit and ensuing arbitration, or could have taken steps to seek information about the lawsuit. The law does not impose such a duty on an insurer to seek out information regarding the existence of a lawsuit against the insured.[18]

The DeCourseys also relied on call logs they had allegedly obtained from Bordelon which show that Bordelon had received a subpoena from the DeCourseys requesting production of the AHS file, and that First National had issued a claim number to Bordelon before the arbitration date pertaining to the DeCourseys. The trial court excluded the call logs as hearsay, and because the DeCourseys could not authenticate them. Even if the call logs were admissible, the content of the logs does not demonstrate that either Bordelon or First National received timely tender of the lawsuit or ensuing arbitration by the DeCourseys, as required under the policy.

First National, on the other hand, set forth undisputed evidence that the DeCourseys' lawsuit was tendered on July 14, well after the arbitration proceeding, when the Commissioner called First National and forwarded the suit papers and

---

[17] Griffin, 108 Wn. App. at 140.

[18] USF Ins. Co., 164 Wn.2d at 421 ("'An insurer cannot be expected to anticipate when or if an insured will make a claim for coverage; the insured must affirmatively inform the insurer that its participation is desired.") (quoting Griffin, 108 Wn. App. 140). "The duties to defend and indemnify do not become *legal obligations* until a claim for defense or indemnity is tendered." Id. Further, the insurance contract itself required the insured to "[i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'" Clerk's Papers at 320.

arbitration award. Even though Ellis spoke with Tonn on April 23, 2010 and mentioned an arbitration, Ellis gave insufficient detail for the conversation to function as a tender of the DeCourseys' counterclaim. Further, Ellis instructed Tonn not to investigate. The record demonstrates that First National received notice of the counterclaim after entry of the arbitration award, leaving no genuine issue of material fact concerning late tender.

Prejudice

An insurer is not relieved of its duties under the policy unless it shows the late notice caused it actual and substantial prejudice.[19] The existence of prejudice caused by late notice is typically a question of fact.[20] The insurer has the burden of proving actual and substantial prejudice from the breach.[21] The insurer must prove that an insured's breach of a notice provision had an identifiable and material detrimental effect on its ability to defend its interests,[22] including its ability to "evaluate or present its defenses to coverage or liability."[23]

Courts may find prejudice as a matter of law if the insurer could have eliminated liability if given timely notice.[24] "[I]f the insurer claims that its own counsel would have defended differently, it must show that its participation would have materially affected

---

[19] USF Ins. Co., 164 Wn.2d at 426; Griffin, 108 Wn. App. at 140.

[20] USF Ins. Co., 164 Wn.2d at 427.

[21] Id.

[22] Id. at 430.

[23] Canron, Inc. v. Fed. Ins. Co., 82 Wn. App. 480, 491-92, 918 P.2d 937 (1996); see also USF Ins. Co., 164 Wn.2d at 430.

[24] USF Ins. Co., 164 Wn.2d at 430 (discussing other circumstances that indicate prejudice as a matter of law); Unigard Ins. Co. v. Leven, 97 Wn. App. 417, 427, 983 P.2d 1155 (1999) (insurer was prejudiced as a matter of law by inability to argue its insured was not a potentially liable party under the Model Toxics Control Act, chapter 70.105D RCW).

the outcome, either as to liability or the amount of damages."[25] V&E was not represented at arbitration, either by itself, by defense counsel of its choosing, or by insurer-appointed counsel. If, for instance, the DeCourseys' counterclaim and arbitration award could be characterized properly as against AHS, Inc., rather than V&E, First National was prevented from asserting a liability defense based on RCW 23B.14.340. That statute provides that a Washington corporation has no capacity to sue or be sued two years after dissolution.[26] AHS, Inc. dissolved on January 20, 2004, and the DeCourseys asserted their counterclaims in April 2006.[27]

V&E's failure to appear at arbitration also prejudiced First National's ability to investigate and develop its coverage defenses. First National highlights various policy provisions that could preclude coverage for the damage claimed by the DeCourseys, but which it did not have the opportunity to timely investigate before entry of the arbitration award. The DeCourseys' counterclaim alleged that V&E failed to complete its electrical work. First National contends the DeCourseys' allegations of improper work do not constitute "property damage" caused by an "occurrence" as those terms are defined in its policy. First National also points to the possible applicability of the

---

[25] USF Ins. Co., 164 Wn.2d at 430.

[26] RCW 23B.14.340 (providing a two-year window to sue and be sued for corporations with a dissolution date prior to June 7, 2006).

[27] First National also relies upon the proposition that V&E's agreement to arbitrate the DeCourseys' counterclaims prejudiced it as a matter of law. This court in MacLean Townhomes, LLC v. Am. States Ins. Co., held that an insured's unilateral agreement to binding arbitration constituted prejudice as a matter of law because "[g]iven the extremely limited scope of available judicial review, the agreement removed judicial remedies that the insurer might have had." 138 Wn. App. 186, 189, 156 P.3d 278 (2007). We do not reach this argument, as it appears from the record that the parties were subject to mandatory arbitration under chapter 7.06 RCW rather than under the Uniform Arbitration Act, chapter 7.04 RCW, as in MacLean.

exclusion for damage to the insured's own work. More fundamentally, First National also notes the question of whether the alleged damage occurred within the policy period.

Finally, First National highlights the ambiguity in the judgment on which the DeCourseys sought to execute. The judgment describes the judgment debtor as "V&E Medical Imaging Services, Inc., aka Automated Home Solutions, a Washington Corporation (also known and doing business under the names . . . "Automated Home Solutions, Inc.").[28] As First National correctly notes, if AHS, Inc., the named insured on the policy, and V&E are in fact distinct entities, and the judgment is against V&E, First National insures only AHS, Inc., and there is a viable defense that First National would not be liable for a judgment against V&E.[29]

The record unambiguously demonstrates that, as a result of the late notice, First National could not assert liability defenses on behalf its insured, nor could it investigate and develop its own coverage defenses. First National was entitled to summary judgment, as it met its burden to demonstrate the late notice prejudiced it as a matter of law.

Motion to Strike

The DeCourseys argue the trial court erred in declining to strike First National's answer to their counterclaims. The DeCourseys asserted their counterclaims on

---

[28] Clerk's Papers at 423.

[29] As we noted above, the issue of whether V&E was a covered entity under the First National policy is not before us; rather, we note the identity of the insured was a viable potential defense to coverage. The First National policy lists AHS, Inc. as the only insured. While V&E did business under the trade name Automated Home Solutions, V&E and AHS, Inc. never merged. V&E and AHS, Inc. were always distinct corporate entities. The policy identifies only AHS, Inc. as the insured.

January 12, 2011, and First National answered on September 16, 2011. CR 12(a)(4) provides that "the plaintiff shall serve his reply to a counterclaim in the answer within 20 days after service of the answer." First National did not comply with CR 12(a)(4). However, the DeCourseys did not file a motion for entry of default under CR 55(a)(1), the recourse available to litigants if an opposing party fails to respond to a claim. CR 55(a)(2) provides "[i]f the party has appeared before the motion [for entry of default] is filed, he may respond to the pleading or otherwise defend at any time before the hearing on the motion."[30] The court did not err in denying the DeCoursey's motion to strike.

Affirmed.

WE CONCUR:

___

---

[30] The DeCourseys argue the court should have applied CR 15, but that rule applies only to amended pleadings, as the trial court recognized: "First National's Answer to Defendant's Counterclaims is not an amendment of Plaintiff's complaint." Clerk's Papers at 885.